SECURITIES AND EXCHANGE COMMISSION, and Securities Investor Protection Corporation, Plaintiffs,

v.

KENNETH BOVE & CO., INC., Defendant.

No. 72 Civ. 2287 (MP).

United States District Court, S. D. New York.

June 1, 1978.

See also D.C., 378 F.Supp. 697.

Kevin H. Bell, Washington, D. C., for plaintiff Securities Investor Protection Corp.

William W. Golub, pro se.

Rosenman, Colin, Freund, Lewis & Cohen, New York City, for trustee.

## MEMORANDUM ON FEE APPLICATIONS

POLLACK, District Judge.

The Trustee and counsel have applied for final fee allowances for their services in connection with the liquidation of a brokerage firm pursuant to the Securities Investor Protection Act of 1970, 15 U.S.C. §§ 78aaa *et seq.* (SIPA hereafter). Kenneth Bruce & Co., the broker-dealer, was taken over for liquidation in 1972. William W. Golub, Esq. was named Temporary Receiver on May 25 of that year, and Trustee on August 17. In due course, the law firm of Rosenman Colin Freund Lewis & Cohen * was named as Trustee's counsel. Golub is a senior partner of the Rosenman firm. In addition, Touche Ross & Co. were appointed to be the Trustee's accountants.

The fees sought total $460,000: $104,000 for the Trustee and $356,000 for his law firm. Counsel also seeks $12,882.09 as reimbursement for expenses. The applicants heretofore have received $150,000 on account of the final allowances to be made herein: $35,000 for the Trustee and $115,-000 for his attorneys.

* Known at the time of appointment as Rosenman Colin Kaye Petschek Freund & Emil.

The Securities Investor Protection Corporation (SIPC hereafter) has filed affidavits of its General Counsel stating that in the agency's opinion, the fees requested are reasonable. SIPC will furnish sufficient funds to permit payment of such allowances as this Court might award.

■ The clear intent of SIPA is to make section 241 of the Bankruptcy Act, 11 U.S.C. § 641, applicable to fee allowances in brokerage liquidations. *See* 15 U.S.C. § 78fff(c)(1). That section provides that "the judge may allow . . . reasonable compensation for services rendered . . in a proceeding under this chapter . . . by the trustee and . . . [his] attorneys." Section 241 also specifically makes inapplicable section 48 of the Bankruptcy Act, 11 U.S.C. § 76, which governs the trustee's compensation in straight bankruptcies. Thus, as in Chapter X reorganizations and unlike straight bankruptcies, rigid economy is not the primary criterion for fee allowances in SIPC liquidations. At the same time, the Court must be careful to avoid permitting a brokerage liquidation to be turned into an opportunity for vicarious generosity at the expense of a stricken entity, or of the brokerage community which supports SIPC. *SIPC v. Charisma Securities Corp.*, 352 F.Supp. 302, 306 (S.D.N.Y. 1972).

### The debtor.

Kenneth Bove & Co., Inc., a stockbrokerage organization, had its principal office at 42 Broadway, New York City. It also had five branch offices: two in New York City, and one in each of Boston, Los Angeles and Miami. The organization employed about 155 employees, and held approximately 7,000 customers' accounts. Assets subject to administration, including money advanced by SIPC, totalled about $6,000,000. Securities worth nearly $3,500,000 and almost $912,000 in cash were distributed to Bove's customers.

### The Trustee.

William Golub has been a member of the New York Bar for approximately forty years. He has extensive experience with respect to securities, reorganizations and bankruptcies: he served as trustee in another broker-dealer liquidation under SIPA, and as counsel to trustees and receivers in other insolvency proceedings. He acts as the attorney in charge of the Rosenman firm in such matters, and is recognized as one of the leading members of the bar in his field. His appointment as Trustee no doubt was based on the legal expertise which he was expected to, and did, employ, and his fee application certainly requests compensation for services beyond caretaking and responsibility for the assets.

Following his appointment, the Trustee took possession of the enterprise for liquidation, inventoried its assets, and took the necessary steps to discontinue its business. He established communications with customers and issued statements of their accounts. He took possession of securities on hand and invested available cash. Appraisals were arranged, and the debtor's tangible property was sold.

The Trustee engaged a permanent staff of eight of Bove's employees, as well as additional full time employees to expedite the transfer and delivery of securities, with SIPC's advance authorization and approval. He also hired temporary personnel from time to time to perform various clerical tasks. The accountants collated and prepared the requisite financial information relating to the estate, segregating assets into appropriate categories and making the necessary calculations and summaries. The resulting statements were not audited. For these services, the accountants have been paid a total of $307,188.05.

To detail the services performed by the Trustee, as set out at length in his initial 1975 fee application, would unnecessarily expand this review. Suffice it to say that he maintained close control of the liquidation and did whatever needed to be done. He attended at Bove's offices two or three days a week, was in daily communication with his office manager there, and conferred with his office staff and accountants at least once a week. A major time-con-

suming duty was to receive and respond to an endless stream of inquiries by customers, broker-dealers, priority claimants, general creditors, and SIPC and other governmental agencies.

In his 1975 application, the Trustee wrote that it was

"essential for applicant to devote a major portion of his time to the performance of his duties herein over extended periods. Moreover, with relatively few exceptions, applicant was called upon to perform some services on a daily basis throughout the course of this proceeding."

Expenses of administration, including accountants' fees but not including allowances ·for the Trustee or his counsel, total $738,-908.12 to date.

Beginning in December, 1973 with the substantial completion of the distribution of cash and securities, the Trustee released employees who were no longer needed and combined the functions of the remainder. The estate appeared essentially ready to close on April 29, 1975, the only then open items being a tax refund claim and a dispute over withholding tax incurred during the administration period. In his application of April 30, 1975, the Trustee requested an allowance of $95,000, noting the services still to be performed. He also disclosed that the fee which was allowed would be shared with his law partners in the same manner as all other professional partnership income.

The Trustee recently amended the 1975 application, reporting that with the addition of the time which he devoted to administration in the interim, he spent 1,406.75 hours on this proceeding through December 31, 1977. He estimated that fifteen more hours probably would be required before the case was closed. On this basis, he requests an allowance of $104,000, pointing out that this is substantially less than the regular rate which his firm charges for his services.

*Trustee's counsel.*

The Trustee's partners have submitted a separate application for a fee for the law firm. It contains a historical review of the proceedings similar in outline and content to the Trustee's, except possibly more expansive. It claims that the Trustee's partners devoted 1,057 hours to this proceeding, that associates employed by the firm contributed 6,438.5 hours, and that the firm's paralegals supplied 1,968 hours. On this basis the firm requests $360,000, which as SIPC points out amounts to an average of $43.32 per hour.

The papers submitted did not provide enough information to permit an appropriate evaluation of the fee application. *Cf. City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 470–73 (2d Cir. 1974) (attorneys' fees in class action settlement). Accordingly, the Court requested and received a breakdown of the hours spent by individual associates and paralegals on this proceeding, together with their respective rates of compensation. In addition, since the services described in the application include many mechanical functions not calling for professional legal work, the Court requested a breakdown of the time spent by associates and paralegals on non-legal, clerical and ministerial duties. However, the firm has advised the Court that no such segregation was or could be made. The partnership states that "all the work covered by our firm's application was typical of the activities of counsel for a Trustee in a Chapter X proceeding."

*Discussion.*

■ The fee application by Trustee's counsel is troublesome in two respects. Both difficulties arise in part from the commingling of interests which occurs when a trustee's lawyers also are his law partners, and they share one another's fees. A lawyer-trustee's employment of his own law firm is a questionable practice in substantial estates, *see In re Ira Haupt & Co.*, 361 F.2d 164 (2d Cir. 1966) (dictum), especially when the trustee has been selected by SIPC for his legal expertise.

As Judge Friendly pointed out in *Haupt*, the Court should be able to rely on the trustee for assistance in assessing the necessary expenses of administration. Yet, a

trustee who is represented by his own firm disables himself from offering such assistance with respect to the application for counsel fees. Thus, although the trustee is not prohibited from utilizing his own firm, to do so causes serious problems when compensation is sought. 361 F.2d at 168.

In the instant case, difficulties arise, first, in connection with segregating the work attributable to the law firm from that of the Trustee. The recital of the entire history of the liquidation, set forth in both applications, furnishes no basis for measuring the worth of the Trustee's and the firm's separate services. It is not amiss again to recall that the Trustee, a highly experienced attorney, claims to have spent a major portion of his time on this case for two and a half years.

The litigation services described in the firm's application are, of course, viewed as distinct from the services expected from the Trustee. Litigation, however, can account for only a small fraction of the claimed legal fees. Actions prosecuted by counsel resulted in payments to the Trustee totalling $57,563 and waivers of claims with a face amount of $14,725, in all about a fifth of the amount sought in fees.

So far as the Court could observe, the legal issues posed by this liquidation were relatively simple. As the accredited legal expert on such matters, the Trustee himself undoubtedly passed upon legal questions of any consequence. Accordingly, some of the legal services supplied by his firm seemingly were unnecessary or duplicative. To compensate both the Trustee and the firm in the amounts claimed in their applications might well involve a redundant and improvident expenditure.

The second difficulty presented by the firm's application is that it is impossible to ascertain how many hours were devoted to professional legal work, compensable by a fee award, and how many were devoted to non-legal services, so as to be compensable only as reimbursable disbursements. According to the table submitted by the firm, the average salaries for its associates were $20,000–26,000, and $11,425 for its parale-

gals. Assuming that the firm can bill 1,500 hours per annum for each employee, its average salary expense per hour was $13.33–17.33 for associates and $7.62 for paralegals. Even when account is taken of higher hourly rates for partners and the overhead attributable to employees, it seems clear that the firm's application, at a mixed rate of $43.20 per hour, seeks a profit on every hour expended on this proceeding.

■ Only services requiring legal expertise are compensable by an award of counsel's fees. *In re Mabson Lumber Co.*, 394 F.2d 23, 24 (2d Cir. 1968); Bankruptcy Rule 10–215(c)(3) (formerly Rule 219(c)(3)). Even if the hours devoted to non-legal matters by firm personnel were a prudent expenditure of time, they may only be reimbursed at cost.

■ Enumeration of the hours spent on clerical and ministerial services is doubly essential because the Trustee, as a partner of the firm representing him as counsel, will share in the firm's profits. The rule permitting trustees to share in the compensation received by a law firm of which he is a partner, Bankruptcy Rule 10–215(d) (formerly Rule 219(d)) must be read in its context as an exception to the general principle, that a trustee may not derive any profit from the rendition of services to the estate, *York International Building Co. v. Chaney*, 527 F.2d 1061, 1075–76 (9th Cir. 1975); *Sexton v. Sword S.S. Line, Inc.*, 118 F.2d 708, 710–11 (2d Cir. 1941). Thus, the fee application of a law firm of which the trustee is a partner must carefully segregate the services rendered, lest the trustee be permitted to profit from non-legal services to the estate in violation of his fiduciary duties.

There is no evidence that SIPC addressed these questions in reviewing the applications before giving its blanket approval. SIPC owes the brokerage community which supports it a closer consideration of such troublesome matters.

Years have passed since most of the services for which compensation is sought were rendered. Consequently, the opportunity to question the propriety of the retention of

the Trustee's own firm as counsel, and to insist on more detailed recordkeeping, has been lost with respect to this proceeding.

In order fairly to fix the amounts of compensation in spite of these obstacles, the Court has carefully scrutinized the applications and supporting affidavits. In addition, the Court obtained and examined the docket and other materials from the court files, to supplement the parties' submissions. Thus, the Court is as fully informed as possible under the circumstances as to the services performed by the applicants and their context in the whole liquidation. Finally, the Court necessarily relied on its own extensive experience in private law practice.

■ On the basis of careful deliberation, and a realistic evaluation of the imponderables, the Trustee shall be awarded the sum of $104,000 and the firm shall be awarded a fee of $237,500 together with $12,882.09 in reimbursement for expenses. From these amounts there shall be deducted the sums previously allowed on account of the final fee awards. Accordingly, the Trustee shall receive the net sum of $69,000 and the firm shall receive the total net sum of $135,-382.09.

This shall constitute an order authorizing such payments.

SO ORDERED.