In re INTERAMERICAS, LTD., Interamericas Investments, Ltd., Interamericas Holdings, Inc., Interamericas Financial Holdings, Ltd., Interamericas Financial Holdings Corp., Interamericas Corporation, Amper International, Ltd., Amper, Ltd., INV Capital, Ltd., INV Services, Ltd., Orbost, Ltd., MP Corp., Debtors.

Nos. 04–34519–H1–7 to 04–34530–H1–7.

United States Bankruptcy Court,
S.D. Texas,
Houston Division.

March 29, 2005.

Interamericas, Ltd., The Woodlands, TX, pro se.

Interamericas Investments Ltd., The Woodlands, TX, pro se.

Interamericas Holdings, Inc., The Woodlands, TX, pro se.

Interamericas Financial Holdings, The Woodlands, TX, pro se.

Interamericas Corporation, The Woodlands, TX, pro se.

Amper International Ltd., The Woodlands, TX, pro se.

Amper Ltd., The Woodlands, TX, pro se.

INV Capital, Ltd., The Woodlands, TX, pro se.

INV Services, Ltd., The Woodlands, TX, pro se.

Orbost, Ltd., The Woodlands, TX, pro se.

MP Corp., The Woodlands, TX, pro se.

Keavin McDonald, Blanche D. Smith, W. Steve Smith, Houston, TX, for trustee.

Ellen Maresh Hickman, Houston, TX, Diane G. Livingston, Franklin, TN, for U.S. Trustee.

David J. Levy, Paul M. Botros, Houston, TX, for GMAC Mortgage Corp.

Edward L. Ripley, Houston, TX, for American Founders Financial Corp. & American Founders Life Insurance Co.

## AMENDED ORDER DENYING AMENDED APPLICATIONS TO EMPLOY STEVE SMITH, P.C.

MARVIN ISGUR, Bankruptcy Judge.

The Court has reviewed the Trustee's applications to employ Steve Smith, P.C., as his counsel in each of the above-referenced cases. For the reasons set forth below, the Court finds that the Trustee's application fails to set forth a basis on which the employment of Steve Smith, P.C. is "in the best interest of the estate" pursuant to 11 U.S.C. § 327(d).

### Background

On August 23, 2002, several creditors of IFS Financial Corporation ("IFS"), a Delaware corporation, filed an involuntary petition in the Southern District of Texas. IFS was formed as a subsidiary of Interamericas, Ltd. A review of Interamericas' corporate structure shows that IFS itself held 100 percent of at least four subsidiaries, and existed within a web of companies believed to exist only to hold the stock of their respective subsidiaries—with the holding companies generating little or no income. These companies were incorporated in Ireland, the Cayman Islands, Delaware, Mexico, Texas and Indiana.

By 1998, Hugo Pimienta held most of the top executive offices of the various Interamericas companies. What is alleged to have transpired between these companies, Mr. Pimienta, and other insiders, amounts to actions ranging from irresponsible behavior, to suspicious activity, to blatant fraud. The events described here are a summary of the facts alleged by the Trustee in various pleadings. They have not yet been proven in this Court.

Mr. Pimienta sat on the loan committee of American Founders Life Insurance Company ("AFL") when it was merged into a company largely owned by Mr. Pimienta, Kenneth Phillips and Wayne Schreck. Mr. Pimienta and other insiders approved loans from AFL to Interamericas' shareholders exceeding $40 million in total. IFS later paid over $2.5 million to AFL on these loans. IFS made unsecured loans of roughly $16 million. Interamericas Insurance Holdings Corporation ("Insurance Holdings"), an IFS subsidiary, made a $5 million loan to an insider.

The Trustee also alleges that Mr. Pimienta and other insiders continued to dispose of liquid and illiquid assets within the Interamericas companies. The Interamericas companies owned valuable assets including a foreign exchange in Mexico and a major Tijuana development company, both worth millions of dollars. These assets were allegedly transferred to insiders for no value.

According to the Trustee, a series of subsequent mergers and transactions provided repayments and advance payments on these loans to insiders. By the end of 2001, Mr. Pimienta had stripped the assets from most of the remaining companies. Mr. Pimienta distributed $61 million to stockholders, insiders, friends and families of insiders—none of whom were creditors. Mr. Pimienta took a "loan" of $16 million for himself, family members and close insiders. $21 million was distributed to Pueblo Corporation, a company controlled by Mr. Pimienta and in bankruptcy in the Central District of California. A further

$10 to $15 million went to additional insiders or people favored by Mr. Pimienta.

These allegations, and other complex transactions allegedly involving the stripping of assets in IFS subsidiaries, prompted a major creditor of IFS to sue IFS in the Southern District of Texas before District Judge Lee Rosenthal. During that time, Mr. Pimienta and all other officers and directors officially resigned every position they once held within the Interamericas companies.

An involuntary petition was then filed against IFS on August 3, 2002. Steve Smith was appointed chapter 7 trustee on October 11, 2002. Trustee Smith's wife, Banche Smith, was designated as the lead attorney. Trustee Smith now moves to appoint Blanche Smith as attorney in charge for all above-captioned adversary proceedings.

### Employment of a Trustee's Own Firm

The Trustee's application includes comprehensive and forthright disclosures. Steve Smith, P.C. is a law firm owned by the Trustee. The Trustee and his wife are the only attorneys employed by the firm.

■ Section 327(a) authorizes a trustee to employ counsel with the court's approval. The trustee may employ his own firm pursuant to § 327(d). However, employment of the trustee's own firm may only occur if it is "in the best interest of the estate". 11 U.S.C. § 327(d). Section 327 states:

> The court may authorize the trustee to act as attorney or accountant for the estate if such authorization is in the best interest of the estate.

11 U.S.C. § 327(d). The statute indicates that a court must conclude that the employment would be in the estate's best interest. Practically, this requires that the trustee make some showing of best interest.

■ Employment of a trustee's own firm has both advantages and disadvantages certainly considered by Congress, and now, on an ongoing basis, by the courts. Overall, "retention of the trustee's own firm has been a very effective method of providing quality representation of the bankruptcy estates...." *In re Kusler*, 224 B.R. 180, 193 (Bankr.N.D.Okla.1998). "As is true for any client, a trustee has wide latitude in selecting the legal counsel he wishes to employ...." *In re Gem Tire & Service Co.*, 117 B.R. 874, 874 (Bankr. S.D.Tex.1990). Nonetheless, courts "should be able to rely on the trustee for assistance in assessing the necessary expenses of administration [of the estate]. Yet a trustee who is represented by his own firm disables himself from offering such assistance with respect to the application for counsel fees." *In re Cee Jay Discount Stores*, 171 B.R. at 176; *see also In re Kusler*, 224 B.R. at 192.

■ Section 327(d) is an exception to the general rule that an estate professional must be "a disinterested person" pursuant to § 327(a). *In re Andover Togs, Inc.*, 2001 WL 262605, *2, 2001 U.S. Dist. LEXIS 2690, *11 (S.D.N.Y.2001). Accordingly, "a trustee should be allowed to retain his own law firm only if the 'best-interest-of-the-estate' test is affirmatively demonstrated". *In re Kurtzman*, 220 B.R. 801, 803 (Bankr. S.D.N.Y.1998).[1] The *Kurtzman* opinion contains an extensive discussion regarding

---

1. See, e.g., *In re Showcase Jewelry Design Ltd.*, 166 B.R. 205, 207 (Bankr.E.D.N.Y.1994); *In re Cee Jay Discount Stores, Inc.*, 171 B.R. 173, 174 (Bankr.E.D.N.Y.1994); *In re Gem Tire*, 117 B.R. at 878; *In re Butler Industries, Inc.*, 101 B.R. at 196; *In re Michigan I.R. Co.*, 32 B.R. 325, 326 (Bankr.E.D.Mich.1983); *In re Kusler*, 224 B.R. 180, 193 (Bankr.N.D.Okl. 1998).

the potential conflicts that arise when a trustee retains his own law firm on behalf of an estate. However, unlike *Kurtzman,* this Court has no question about the integrity or quality of work of Trustee Smith. Rather, the Court finds that—even with individuals of the highest integrity—a separate showing of best interest must be made in every case in which a trustee seeks to retain his own firm. This showing may be contained in the application to employ. The Court declines to require a hearing in every relevant case. A motion may, on its face, make a proper showing, and a lack of objection to the motion may obviate the need for a hearing. A showing of some form, however, must be made. In this case, no showing has been made.

Many courts have considered what is necessary to make a showing that "representation by the trustee's law firm would be in the best interest of the estate as opposed to representation by an independent law firm." *In re Butler Industr.,* 114 B.R. 695, 698 (C.D.Cal.1990). *Butler,* for example, lists four examples of possible cause. These include:

1. When the representation is for preference or fraudulent conveyance actions where counsel will have to look for a recovery in order to collect the fees;

2. When only a nominal amount of work must be performed;

3. When the work must be performed on such an urgent basis that outside counsel cannot be hired; and

4. When there will be a substantial cost savings to the estate.

*Id.* at 698, n. 1.

■ However, most relevant authority—including *Butler*—attempts to limit the retention of the trustee's own firm to small cases.[2] Because such considerations are inconsistent with the plain language of § 327(d), this Court declines to impose such a limit. *See United States v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 241, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989).

■ The Court has been unable to locate a comprehensive guide as to when retention of the trustee's own law firm should be considered "in the best interest of the estate". Accordingly, the Court has determined that it will consider the following factors in determining whether to approve the retention by the trustee of the trustee's law firm as counsel to the estate:

1. The qualifications of the members of the firm compared to the complexity of the case;

2. Whether the firm is regularly hired by others to handle similar litigation;

3. Whether the anticipated litigation predominantly involves issues of bankruptcy law with which the law firm has particularized expertise;

4. Whether the time commitment required to handle the case is consistent with the size of the firm and the balance of the firm's time commitments;

5. Whether only a nominal amount of work must be performed;

6. The availability of other qualified firms to handle the case;

7. The rates charged by the firm compared to the rates charged by other qualified firms;

8. Whether there will be material cost savings to the estate; and

9. Other case-specific factors.

---

2. *See, e.g., In re Butler Industr.,* 114 B.R. at 698, n. 1; *In re Michigan I.R. Co.,* 32 B.R. at 326; *SEC v. Kenneth Bove & Co.,* 451 F.Supp. 355, 358 (S.D.N.Y.1978); *In re Ira Haupt & Co.,* 361 F.2d 164 (2d Cir.1966).

In the present case, the Trustee's application reflects that the Trustee is seeking to retain his own firm for reasons that are unrelated to whether it is in the best interest of the estate. Exhibit "A" to the Trustee's application indicates that the Trustee relies on his own firm to handle unprofitable cases. Thus, the Trustee reasons that in order to allow his firm to afford to prosecute the unprofitable cases, he must also hire his firm to handle profitable cases—such as the present case.

The Trustee's logic reflects that it may be in his firm's best interest to be hired in this case. It may also reflect that it is in the best interest of unrelated, unprofitable estates for the Trustee's firm to be hired in this case. However, those factors are irrelevant to the determination that must be made under § 327(d). Indeed, those factors reflect that the Trustee is considering facts that are inconsistent with his well-established duties to the estate.

The adversary proceedings here involve a complex series of financial transactions, the prosecution of lawsuits involving foreign entities, and the possibility of complex trials to be conducted before this or other courts. Indeed, over 100 related adversary proceedings have already been filed. There are a number of lawyers and law firms in Houston and the United States that are eminently qualified to handle such complex litigation. This Order is not to imply that the firm Steve Smith, P.C. could not be one of those firms, but no showing has been made that it is the "best" qualified. The Trustee should instead consider the factors outlined in this and similar opinions.

Thus, under the first and second factor of nine factors outlined above, the Trustee fails to make any showing on the qualifications of Blanche Smith or Steve Smith, P.C. compared to the complexity of this case. As this is a highly complex case, the first and second factors are of particular importance. The only other cases discussed by the Trustee with respect to his firm involve smaller, less profitable cases which he hopes to offset with this large, potentially profitable case. The Court cannot make a best interest determination under the first or second factor.

With respect to whether the anticipated litigation predominantly involves issues of bankruptcy law, the Trustee makes no such showing. The primary issues in these adversaries appear to involve fraud, breach of fiduciary duty, and other state law claims. There is little evidence that a firm that commonly handles bankruptcy-related matters is particularly qualified to handle complex fraud claims. Again, the Court cannot determine that granting the application is in the best interest of the estate.

The fourth factor requires an analysis of whether the firm can handle the required time commitment of the case. As stated above, this is a highly complex case with many adversaries. It is unclear that one attorney in a two-person firm is capable of handling these matters in a way that is in the estate's best interest. No mention is made in the application of Blanche Smith's workload, the support staff at Steve Smith, P.C., or other relevant facts about the firm. There is no reason to believe that Blanche Smith cannot competently pursue these claims, but the Court declines to make such an assumption under the circumstances.

It is clear that these adversaries are numerous and complex. Questions of whether only a nominal amount of work must be performed are not especially relevant under the circumstances. The Court finds that this is not a case where only nominal work is anticipated.

With respect to the availability of other qualified firms to handle the case, the Court previously stated that numerous attorneys and firms both in Houston and throughout the United States could admirably prosecute these claims. The Trustee makes no mention of other firms in his application. The Court finds that hiring Steve Smith, P.C. here will not be in the best interest of the estate over numerous other firms. This is not to say that the firm is not qualified, but that a showing is required.

Finally, the Court must consider the cost of employment under the seventh and eighth factors. The Trustee makes no showing that Steve Smith, P.C. charges lower or equivalent rates than the rates charged by qualified attorneys in other firms. There is also no showing that Steve Smith, P.C. would be more efficient than other firms or would provide any other material cost savings to the estate.

The Court must now look at any case-specific factors not properly considered in the eight factors outlined above. Here, the Court notes that the Trustee is not only attempting to hire his firm, but also his spouse. In general, a trustee may employ his spouse, subject to the trustee's fiduciary duty to the estate. *In re Alexander,* 129 B.R. 183 (Bankr.D.Minn.1991); *In re Airlift International, Inc.,* 92 B.R. 550 (Bankr.S.D.Fla.1988). As trustees are held to a fiduciary standard, legal counsel for trustees "must likewise satisfy this high standard of conduct." *In re Consolidated Bancshares, Inc.,* 785 F.2d 1249, 1256, n. 6 (5th Cir.1986); *see also In re Evangeline Refining Co.,* 890 F.2d 1312, 1323 (5th Cir.1989). Therefore, the trustee and the trustee's attorney must not compromise their primary duty to the bankruptcy estate in the course of dealing with one another. *In re Gem Tire & Service Co.,* 117 B.R. at 877. The Court

believes the Trustee can employ his spouse and still maintain his fiduciary duty to the estate. In this case, Steve Smith, P.C. has already been retained as general counsel to the estate. Although this factor gives the firm familiarity with the case, it is unclear whether this factor alone can justify retention as counsel in the related adversaries.

The Motion to Employ is denied without prejudice. The Trustee is granted leave to re-file the applications.