FILED
United States Court of Appeals
Tenth Circuit

November 3, 2015

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

In re: SCHUPBACH INVESTMENTS,
L.L.C.,

    Debtor.

------------------------------

MARK J. LAZZO, P.A.; MARK J.
LAZZO; SCHUPBACH
INVESTMENTS, L.L.C.,

    Appellants,

v.

ROSE HILL BANK; CARL B. DAVIS,
Trustee of the Schupbach Investments
Liquidation Trust,

    Appellees.

No. 14-3277

---

**APPEAL FROM THE UNITED STATES BANKRUPTCY
APPELLATE PANEL FOR THE TENTH CIRCUIT
(BAP Nos. 13-077-KS and 13-078-KS)**

---

Submitted on the briefs:[*]

---

[*] After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

Mark J. Lazzo, Mark J. Lazzo, P.A., Wichita, Kansas, for Appellants.

J. Michael Morris, Klenda Austerman, LLC, Wichita, Kansas, for Appellees.

---

Before **TYMKOVICH**, Chief Judge, **HOLMES** and **McHUGH**, Circuit Judges.

---

**TYMKOVICH**, Chief Judge.

---

Mark J. Lazzo served as legal counsel for Schupbach Investments, L.L.C. (Debtor), in its Chapter 11 bankruptcy case. After confirming a liquidation plan for the Debtor, the bankruptcy court entered a final fee order approving certain disputed fee applications filed by Mr. Lazzo. Rose Hill Bank (RHB), a creditor of the estate, and Carl B. Davis, the trustee of the Schupbach Investments Liquidation Trust (Trust), appealed the final fee order to the Bankruptcy Appellate Panel (BAP). The BAP reversed those portions of the bankruptcy court's order that (1) confirmed *post facto* approval of Mr. Lazzo's employment, and allowed fees incurred prior to approval of his employment, and (2) allowed postconfirmation fees.[1] The Debtor, Mr. Lazzo, and his law firm, Mark J. Lazzo, P.A. now appeal from the BAP's decision. We affirm.

---

[1] Reference to "fees" in this opinion includes expenses, where applicable.

**BACKGROUND**

The Debtor's business involved the purchase, renovation, rental, and sale of residential real estate in Wichita, Kansas. Its primary assets included rental properties that were mortgaged to creditors. Jonathan and Amy Schupbach (Schupbachs) owned and operated the Debtor. RHB was its largest creditor.

In March 2011, the Debtor retained Mark J. Lazzo, P.A., as bankruptcy counsel.[2] The Debtor filed its Chapter 11 petition on May 16, 2011. At the time it filed the petition, it failed to submit an application to employ Mr. Lazzo as its attorney. Mr. Lazzo did submit a signed "Disclosure of Compensation of Attorney for Debtor" form at the time of filing, in which he disclosed his representation of the Debtor, the agreed hourly rate, and the retainer he had received. Aplt. App. at 128.[3]

## I. The Employment Applications

One month after Debtor filed its Chapter 11 petition, the United States Trustee notified Mr. Lazzo that an application for approval of his employment had not yet been filed. Mr. Lazzo later explained that he had prepared an employment application along with the petition, but he had neglected to file it because he had to

---

[2] In the remainder of this order and judgment, we refer to Mr. Lazzo personally as the party employed by the Debtor and seeking fees for legal services.

[3] The Appellant's Appendix is not consecutively paginated as required by 10th Cir. R. 30.1(D)(1). Instead, the 197-page appendix is numbered and indexed by its table of contents to documents that contain non-consecutive page numbers from 100 to 970. *See* Aplt. App. at ii. We have followed this approach in citing to the appendix, but have found this form of pagination unhelpful to our review.

prepare and file a "whole bunch of first day motions . . . regarding rents involving eight different creditors" and the application "got lost in that work." Aplee. Supp. App., Vol. I at 166-67. On June 17, 2011, shortly after he received the notice from the United States Trustee, Mr. Lazzo filed his initial employment application. This initial application, however, did not explicitly request *post facto* approval of his employment from the filing date of the petition.

Mr. Lazzo did not clarify that he sought approval of his employment *post facto* to the petition date until several months later, on September 1, 2011, when he filed a supplemental employment application. Various creditors objected to Mr. Lazzo's request for *post facto* employment. After a hearing, the bankruptcy court granted the application, reasoning that Mr. Lazzo had "substantially complied" with the requirement to seek approval because (1) he filed his disclosure form at the time of the Debtor's petition, (2) "[a]ll the facts and circumstances surrounding the filing of this case and everything that was going on are sufficient justification for not [timely] filing the application," and (3) the United States Trustee had not objected to the application. *Id.*, Vol. II at 256-57.

## II. The Creditors' Liquidation Plan

On October 3, 2011, the Debtor filed a proposed Chapter 11 plan, which would have permitted the Schupbachs to retain their ownership and control of the Debtor. A number of secured creditors filed a competing plan calling for liquidation of the Debtor. The Creditors' Plan of Liquidation (Creditors' Plan) called for the transfer

- 4 -

of the Debtor's secured property to the secured creditors; the cancellation of the Schupbachs' ownership interest; the dissolution of the Debtor; and the creation of a liquidation trust vested with the Debtor's other property and rights. The Debtor and the Schupbachs initially objected to the Creditors' Plan, but they later withdrew their objections to the plan as amended, and the bankruptcy court confirmed it.

### III.  The Fee Applications

The Debtor filed a total of seven fee applications, plus two supplemental seventh applications, which together covered Mr. Lazzo's work from May 13, 2011 through March 14, 2013. Various creditors objected to all or part of the fourth through supplemental seventh applications. The bankruptcy court held a hearing on the unresolved fee issues and on October 3, 2013, it entered its final fee order. In the final fee order, the bankruptcy court determined that Mr. Lazzo was entitled to payment for his services on behalf of the Debtor after confirmation of the Creditors' Plan; declined to reconsider its *post facto* approval of Mr. Lazzo's employment; allowed the disputed portions of the fee applications; and allowed all fees and expenses, both those previously awarded on an interim basis and those allowed by virtue of the final fee order, as administrative expenses of the Debtor's estate.

**IV. The BAP Appeal**

RHB and Mr. Davis appealed to the BAP. In rulings pertinent to this appeal,[4] the BAP determined that (1) Mr. Lazzo had not shown the "extraordinary circumstances" required to justify the approval of his employment *post facto*; and (2) the confirmation of the Creditors' Plan, which terminated Debtor's status as debtor-in-possession and stripped the Debtor of all rights, powers, and duties of a bankruptcy trustee, also ended the bankruptcy court's ability to award compensation from estate assets for post-confirmation work performed by Mr. Lazzo. (One BAP judge dissented concerning the disallowance of post-confirmation fees.) Accordingly, the BAP reversed the bankruptcy court's allowance of fees incurred prior to the approval of Mr. Lazzo's employment and after the confirmation of the Creditors' Plan, and remanded to the bankruptcy court to adjust the amount of the final fee award.[5]

---

[4] In its order, the BAP also upheld the bankruptcy court's allowance of certain fees that RHB and Mr. Davis had contended did not benefit the Debtor's estate. RHB and Mr. Davis have not cross-appealed the BAP's decision affirming the allowance of these fees.

[5] Although the BAP remanded to the bankruptcy court for further proceedings, that court's only task on remand was to adjust the amount of the final fee award by subtracting the disallowed fees. Appellants have therefore appealed from a final decision that we may review. *See Clark v. Zwanziger (In re Zwanziger)*, 741 F.3d 74, 75 n.1 (10th Cir. 2014) ("The BAP's final decision is appealable when the BAP does not remand for significant further proceedings." (internal quotation marks omitted)).

## DISCUSSION

### I. Standard of Review

"When an appeal is taken from a BAP decision, this court independently reviews the underlying bankruptcy court's decision." *Market Ctr. E. Retail Prop., Inc. v. Lurie (In re Mkt. Ctr. E. Retail Prop., Inc.)*, 730 F.3d 1239, 1244 (10th Cir. 2013) "[W]e treat the BAP as a subordinate appellate tribunal whose rulings are not entitled to any deference (although they certainly may be persuasive)." *Davis v. Pham (In re Nguyen)*, 783 F.3d 769, 772 (10th Cir. 2015) (internal quotation marks omitted). We review the bankruptcy court's legal determinations de novo, its factual findings for clear error, *Market Ctr.*, 730 F.3d at 1244, and its award of attorney's fees for an abuse of discretion, *Barron & Newburger, P.C. v. Texas Skyline, Ltd. (In re Woerner)*, 783 F.3d 266, 270 (5th Cir. 2015).

### II. *Post Facto* Approval of Employment

With court approval, a bankruptcy trustee or debtor-in-possession may employ professional persons, including attorneys, to assist them in their duties. 11 U.S.C. § 327(a).[6] Where an attorney has been "employed under section 327," a bankruptcy court is empowered to award him compensation from the estate. *Id.* § 330(a)(1). But "any professional not obtaining approval is simply considered a volunteer if [he]

---

[6] Section 327(a) refers to employment by a bankruptcy trustee. A debtor-in-possession has the rights and responsibilities of a trustee, including the ability to employ professional persons. 11 U.S.C. § 1107(a).

- 7 -

seeks payment from the estate." *Interwest Bus. Equip., Inc. v. U.S. Tr. (In re Interwest Bus. Equip., Inc.)*, 23 F.3d 311, 318 (10th Cir. 1994).

Although neither § 327(a) nor Fed. R. Bank. P. 2014—which implements that statute—expressly requires that the approval must precede the attorney's engagement, courts have generally read such a requirement into the statute as a matter of judicial administration. *See, e.g.*, *Matter of Singson*, 41 F.3d 316, 319 (7th Cir. 1994) ("Prior approval is strongly preferred because it permits close supervision of the administration of an estate, wards off 'volunteers' attracted to the kitty, and avoids duplication of effort."). Moreover, D. Kan. Local Bankruptcy Rule 2014.1(a) expressly requires that in order to employ an attorney under § 327 to conduct a Chapter 11 case, the debtor-in-possession "must file *with the petition* an application to employ [the] attorney[]."

We have assumed that a bankruptcy court may approve an attorney's employment *post facto*, thereby entitling him to seek fees for work performed prior to approval. *See In re Albrecht*, 233 F.3d 1258, 1260 (10th Cir. 2000) (collecting cases); *Land v. First Nat'l Bank of Alamosa (In re Land)*, 943 F.2d 1265, 1267 (10th Cir. 1991). But Mr. Lazzo argues that we have not yet adopted a standard for evaluating whether such a *post facto* application should be approved. He contends that the appropriate standard for such an application is "excusable neglect."

In *Land*, we stated that retroactive approval of an attorney's employment "is only appropriate in the most extraordinary circumstances" and that "[s]imple neglect

will not justify nunc pro tunc approval." *Land*, 943 F.2d at 1267-68.  Mr. Lazzo

argues that our statements in *Land* were dicta.  We disagree.  The appellants in *Land*

challenged the bankruptcy court's order requiring their attorney to return certain fees

he had received from third parties.  They argued that this result was incorrect because

the bankruptcy court did not conduct an evidentiary hearing and did not determine

that the fees were excessive.  *See id.* at 1267.  But we rejected this articulation of the

issue on appeal, observing that the bankruptcy court ordered the attorney to return the

fees not because they were excessive, but because the attorney "had never obtained

the bankruptcy court's approval of his employment by the debtors."  *Id.*  After stating

the extraordinary circumstances standard, we noted that "[t]his appeal does not

present any extraordinary circumstances," and determined that the appellants had

therefore not shown that the bankruptcy court abused its discretion in denying *post*

*facto* approval to hire the attorney.  *Id.* at 1268.

Our statement concerning the need to show extraordinary circumstances

therefore was not dicta (i.e., a statement not necessarily involved or essential to the

resolution of the appeal, *see Rohrbaugh v. Celotex Corp.*, 53 F.3d 1181, 1184

(10th Cir. 1995)), but instead provided a reason to affirm the bankruptcy court's

denial of *post facto* approval for the disputed fees.  But even if our statement in *Land*

were dicta, we would still apply the extraordinary circumstances test here, because it

is the appropriate standard and represents the prevailing approach in the circuits.

*See* 3 *Collier on Bankruptcy* ¶ 327.03[3], at p. 327-25 (Alan N. Resnick & Henry J.

Sommer, eds., Jun. 2015) ("The prevailing approach is that a bankruptcy court should grant retroactive retention orders [only] in extraordinary or exceptional circumstances to deter attorneys and other professionals from general nonobservance of section 327.").

In arguing for a lesser, "excusable neglect" standard, Mr. Lazzo primarily cites the minority viewpoint expressed by the Seventh Circuit in *Singson*, 41 F.3d at 319-20. We note that the *Singson* court expressly rejected our approach in *Land*. *See id.* at 319 ("We are not persuaded by, and do not follow, cases such as [*Land*] . . . , that adopt an 'extraordinary circumstance' requirement.").[7] Even if we found the minority approach in *Singson* persuasive (which we do not), we would not repudiate *Land* in its favor, as a panel of this court generally cannot overrule the judgment of a prior panel. *United States v. White*, 782 F.3d 1118, 1126-27 (10th Cir. 2015).

Having determined that the bankruptcy court applied an improper, "substantial compliance" standard rather than the appropriate "extraordinary circumstances" test, and that the "excusable neglect" standard contended for by Mr. Lazzo is not the proper standard, we are left to determine the appropriate remedy. Mr. Lazzo argues that we should remand to the bankruptcy court for application of the "extraordinary circumstances" standard in the first instance. We decline to do so. Although we

---

[7] The Seventh Circuit's express rejection of the test it found we adopted in *Land* provides further evidence that the use of the "extraordinary circumstances" test in *Land* was not dicta.

recognize that as a general matter the bankruptcy court is vested with discretion in determining whether an applicant has shown extraordinary circumstances, *see Land*, 943 F.2d at 1268, here the BAP's conclusion that Mr. "Lazzo's inadvertent neglect in failing to timely file his employment application is not an extraordinary circumstance," BAP Opinion at 19, is correct as a matter of law. *See, e.g., Ibbetson v. U.S. Tr.*, 100 B.R. 548, 551 (D. Kan. 1989) (affirming bankruptcy court's order denying *post facto* retention where attorney asserted that his failure to seek initial approval of employment was due to a combination of factors including the "farm financial crisis" and "other pressures" along with the necessity of relying on "inexperienced, underpaid, and overworked young associates for details not affecting the welfare of clients" and the "confusion surrounding the departure of the young associate handling the details of the case," determining that such factors merely showed inadvertence or neglect and did not constitute extraordinary circumstances); *In re Lillian Lawrence, Ltd.*, 136 B.R. 1, 3-4 (Bankr. D.C. 1992) (stating law firm's belief that its application was "either misplaced or returned by the clerk's office for some reason" did not constitute extraordinary circumstances warranting *post facto* employment); *and see generally* 3 Collier on Bankruptcy ¶ 327.03[3], at p. 327-26 n.40 (collecting cases applying extraordinary circumstances standard). We therefore affirm the BAP's decision reversing the bankruptcy court's allowance of *post facto* employment and fees.

### III.  Post-Confirmation Legal Services[8]

The bankruptcy court determined that confirmation of the Creditors' Plan did not bar the allowance of attorney's fees incurred after the confirmation date.  It reasoned that the Debtor retained its status as debtor-in-possession even after plan confirmation and could therefore continue to employ Mr. Lazzo under § 327.  The court relied primarily on 11 U.S.C. § 1101(1), which defines "debtor in possession" as the "debtor except when a person that has qualified under section 322 of this title is serving as trustee in the case."  It determined that because the liquidating trustee did not qualify as a "trustee" under section 322, the Debtor therefore retained debtor-in-possession status even after confirmation of the Creditors' Plan.  The bankruptcy court further found that Mr. Lazzo's post-confirmation services remained "necessary to the administration" of the estate.  11 U.S.C. § 330(a)(3)(C).

A majority of the BAP disagreed.  It concluded that although the bankruptcy court's construction of § 1101(1) was reasonable, if one considered Title 11 as a whole there were other ways to terminate a debtor's status as debtor-in-possession besides appointment of a qualified trustee.  The BAP reasoned that "[t]o remain a

---

[8] Mr. Lazzo contends that appellant RHB lacks standing to challenge the portion of his requested fee award that exceeds RHB's pro rata responsibility for allowed administrative claims under the Creditors' Plan.  The trustee, who is defending this appeal and previously appealed to the BAP, is responsible for payment of all allowed administrative claims and therefore has standing to challenge the entire amount.  Moreover, if Mr. Lazzo's fees were not allowed, the funds would be re-vested in the Trust and used to pay creditors, including RHB.  We conclude that the entire amount of the requested fee award is before us on appeal.

debtor-in-possession after confirmation, the debtor must have at least some rights, powers, and duties of a bankruptcy trustee under [11 U.S.C.] § 1107." BAP Opinion at 24. It concluded that under the terms of the Creditors' Plan and Confirmation Order, the Debtor's status as debtor-in-possession terminated upon confirmation, whereupon the Debtor was stripped of all rights, powers, and duties of a bankruptcy trustee, including the ability to seek payment from the estate for postconfirmation attorney's fees. The BAP's analysis is persuasive.

The Supreme Court has held that when a debtor's status as debtor-in-possession terminates, this also terminates an attorney's authorization under § 327 to provide service as an attorney for the debtor-in-possession. *Lamie v. U.S. Tr.*, 540 U.S. 526, 532 (2004).[9] Thus, as the BAP recognized, the relevant issue here is whether the Debtor retained its status as debtor-in-possession after confirmation of the Creditors' Plan. The bankruptcy court appears to have assumed that the appointment of a qualified trustee was the *only* way to terminate the debtor's status as debtor-in-possession. But that is not what § 1101(1) says.

---

[9] This reasoning effectively undercuts the bankruptcy court's alternative reasoning, that even if "the confirmation of the liquidating plan terminated Debtor's ability as the debtor-in-possession to take actions beneficial to the estate, the Code nevertheless allows for compensation for the post-confirmation services of counsel appointed under § 327 that are necessary for the administration of the estate." Aplt. App. at 883-84. To be compensated from the estate, such services must be both *authorized* and *necessary*. *See* 11 U.S.C. § 330(a)(1), (a)(3)(C). Here, even if necessary, they were not authorized.

By its plain language § 1101(1) eliminates the debtor-in-possession's ability and duty to perform the functions and duties of a trustee in cases where a qualified trustee is serving those functions.  Section 1101(1) thus serves the salutary purpose of avoiding the logistical difficulties inherent in having two different and possibly conflicting "trustees" serving simultaneously.  But to read § 1101(1) as empowering the debtor with perpetual debtor-in-possession status in every case where a trustee has not been formally appointed reads more into the statute than is actually there.

As case law makes clear, debtor-in-possession status terminates not only upon appointment of a qualified trustee, but also upon confirmation of a Chapter 11 plan. *See, e.g.*, *Dynasty Oil & Gas, LLC v. Citizens Bank (In re United Operating, LLC)*, 540 F.3d 351, 355 (5th Cir. 2008) ("Upon confirmation of the plan, the estate ceased to exist, and [the reorganized debtor] lost its status as a debtor 'in possession.'"). Mr. Lazzo attempts to distinguish *United Operating*, reasoning that it "involved a reorganized debtor, not a liquidating agent."  Aplt. Reply Br. at 8.  But that is not a significant distinction under the circumstances of this case, particularly given the provisions of the Creditors' Plan.[10]

_____

[10] Mr. Lazzo argues that a liquidation trust is different from a reorganized debtor because "a liquidation plan does not create a second, separate entity" upon confirmation that is no longer administered by the debtor-in-possession.  Aplt. Reply Br. at 9.  But there is authority that a liquidating trust can do just that.  *See Holywell Corp. v. Smith*, 503 U.S. 47, 55 (1992) (stating that where liquidating trust was established by Chapter 11 reorganization plan and vested with estate assets, "[t]he plan did not simply substitute the trustee for [the debtor-in-possession] as the

(continued)

- 14 -

"[F]or purposes of Chapter 11 bankruptcies, a 'debtor-in-possession' is a debtor *who remains in possession of the pre-petition assets* and *administers them* for the benefit of the creditor body pursuant to 11 U.S.C. § 1107." *Bowers v. Atlanta Motor Speedway, Inc. (In re SE Hotel Props. Ltd. P'ship)*, 99 F.3d 151, 152 n.1 (4th Cir. 1996) (emphasis added). Once the Creditors' Plan was confirmed, the Debtor (which had been dissolved) no longer satisfied this description of a debtor-in-possession. Nor has Mr. Lazzo made a persuasive case that the Debtor continued to perform the essential duties of a trustee as described in 11 U.S.C. § 704.

The Creditors' Plan called for all of the Debtor's secured property to be transferred to the secured creditors, and the unsecured property to be placed into the Trust. It vested the Trust with "all rights and powers of a trustee under the Bankruptcy Code," Aplt. App. at 458, and charged it with paying "all allowed administrative and priority claims," *id.* at 615. It further provided that the Trustee would have the authority to liquidate the unsecured property and to employ attorneys to assist him, without the need for court approval. The Debtor was deemed dissolved as of the plan's confirmation date.

The Creditors' Plan as amended did assign the Debtor (acting through the Schupbachs) responsibility for certain functions in connection with liquidation of the Trust property. The plan provided that:

---

fiduciary of the estate. Rather, it created a separate and distinct trust holding the property of the estate and gave the trustee control of this property.").

- 15 -

> The Schupbachs will cooperate with all secured creditors to whom properties are transferred by *inter alia* (i) turning over all records as to the properties, including but not limited to all written leases, lease applications and documents/information, property tax statements, correspondence from government agencies respecting condition of the properties and/or eminent domain, records as to collection of past due and current rents, and documents on any collection or eviction lawsuits; (ii) meeting with and responding to questions of the creditors respecting the properties; and (iii) such cooperation will be extended to all agents of the secured creditors, including any rental agents as may be designated.

> The Debtor will also, through the Schupbachs, execute quit claim deeds to the various properties transferred . . . to the extent such deeds are provided by the secured creditors. Creditors receiving such deeds will promptly file the same.

*Id.* at 617.

But these mostly ministerial duties fell far short of encompassing the responsibilities of a debtor-in-possession. The bankruptcy court erred in concluding that "[w]hen the liquidating plan was confirmed and the liquidating trust created, Debtor as the debtor-in-possession was not relieved of the duties . . . [of a trustee, as applicable to debtors-in-possession]," *Id.* at 883. The Debtor's obligation to cooperate with the Trustee and the bankruptcy court to carry out the terms of the Creditors' Plan, *see* 11 U.S.C. § 1142, did not allow the Debtor to retain its status as debtor-in-possession. For the foregoing reasons, we affirm the BAP's decision reversing the bankruptcy court's determination allowing an award of post-confirmation fees.

## CONCLUSION

The BAP's judgment is affirmed.

- 16 -