Thomas B. McNamara, United States Bankruptcy Judge
This dispute proceeds at the somewhat confounding intersection of bankruptcy and limited liability company law. An individual debtor filed for bankruptcy protection under Chapter 11. He was the sole member of a limited liability company which, itself, filed for protection under Chapter 11. The individual debtor died. Thereafter, the Court converted his individual case to a liquidation under Chapter 7 and the United States Trustee appointed a Chapter 7 trustee. Meanwhile, because the individual debtor wholly owned the limited liability company, his membership interest in the limited liability company passed to the Chapter 7 bankruptcy estate in the individual case. In re Albright, 291 B.R. 538, 541 (Bankr. D. Colo. 2003). The Chapter 7 trustee, acting as owner, removed the limited liability company's manager and appointed himself as the manager. By virtue of his self-appointment, the Chapter 7 trustee continued as trustee in the Chapter 7 individual case while at the same time also acting as the manager of the Chapter 11 limited liability company.
The Chapter 7 trustee did not request or receive authorization from the Court to be employed as a manager of the Chapter 11 limited liability company under Section 327(a) of the Bankruptcy Code.[1] Instead, he just started performing services. At first, the Chapter 7 trustee had no expectation of receiving any compensation in the Chapter 11 limited liability company case and instead appeared content that he would receive his statutory commission in the Chapter 7 individual case under Section 326(a). But over time, he worked more than he anticipated, leading him to hope that he would receive more than just a statutory commission in the Chapter 7 individual case. And, later, he formed a belief that he should be paid in both bankruptcy cases.
Thereafter, the Chapter 7 trustee, as manager of the Chapter 11 debtor, directed the filing of a plan of reorganization in the Chapter 11 limited liability company case, which included a compensation package for himself for his pre-confirmation services as well as for his proposed post-confirmation employment. The United *583 States Trustee objected to the plan provisions concerning such proposed compensation for the Chapter 7 trustee. At that point, the Chapter 7 trustee put the plan process on the back-burner and instead sought compensation in the Chapter 11 limited liability company case as an administrative expense priority claim under Section 503(b)(1)(A). He did not ask for compensation under Sections 327 and 330 since he had never been approved as a "professional person" in the Chapter 11 limited liability company case and did not believe such approval was necessary. In any event, the Chapter 7 trustee worked hard and seemingly did a good job liquidating the assets of the Chapter 11 limited liability company even though the result was not sufficient to provide any direct monetary benefit to the estate in the Chapter 7 individual case in which he was appointed.
The United States Trustee objected to the Chapter 7 trustee's administrative expense priority claim on a myriad of grounds. At the most fundamental level, the United States Trustee contends that a Chapter 7 trustee may only be compensated through a commission under Section 326(a) in the Chapter 7 case in which he is appointed. Put another way, the United States Trustee contends that a Chapter 7 trustee cannot appoint himself to a new position in another bankruptcy case (especially without seeking to be employed as "professional person" under Section 327(a) in the other bankruptcy case) and enrich himself by receiving additional compensation in the second job. The United States Trustee argues that the Chapter 7 trustee's administrative expense priority claim violates the letter and spirit of the Bankruptcy Code.
All the foregoing leads to a series of tough questions: Is the Chapter 7 trustee a "professional person" under Section 327(a) in the Chapter 11 limited liability company case? If the Chapter 7 trustee is a "professional person," may he be compensated if he did not seek or obtain approval of his employment from the Court? May the Court approve an application for employment for a Chapter 7 trustee who wishes to employ himself as a manager in another bankruptcy case? May the Chapter 7 trustee pursue an administrative expense priority claim under Section 503(b)(1)(A) instead of seeking compensation under Sections 327(a) and 330 ? Is the Chapter 7 trustee's compensation limited by the commission available under Section 326(a) for disbursement in the case in which the Chapter 7 trustee was appointed? May the Chapter 7 trustee use an asset of the estate in which he serves as a fiduciary as a basis for additional personal compensation? These are important and practical questions that were not resolved in Albright, 291 B.R. at 541, the most influential case in this District concerning bankruptcy and limited liability company issues.
I. Jurisdiction and Venue.
The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. Adjudication of the administrative expense priority claim is a core proceeding under 28 U.S.C. § 157(b)(2)(A) (matters concerning administration of the estate), (b)(2)(B) (allowance or disallowance of claims against the estate), and (b)(2)(O) (other proceedings affecting the liquidation of assets of the estate). Accordingly, the Court may enter final judgment on the matter. Venue is proper in the Court pursuant to 28 U.S.C. §§ 1408 and 1409.
II. Procedural Background.
Peter H. Blair, Sr. ("Mr. Blair") filed for protection under Chapter 11 of the Bankruptcy Code on May 7, 2015, in the case captioned: In re Peter H. Blair , 15-15008 TBM (Bankr. D. Colo.) (the "Individual Case"). When he filed for bankruptcy, Mr. *584 Blair wholly owned a limited liability company - Blair Oil Investments, LLC - and served as its Manager. Just after Mr. Blair filed the Individual Case, Blair Oil Investments, LLC (the "Debtor") also sought Chapter 11 relief in the case captioned: In re Blair Oil Investments, LLC , Case No. 15-15009 TBM (Bankr. D. Colo.) (the "Blair Oil Case"). (Ex. A; and Docket No. 1.[2] ) Shortly after initiating both bankruptcy cases, Mr. Blair died. (Docket No. 106 in Individual Case.) Thereafter, the Court converted the Individual Case from a Chapter 11 reorganization to a Chapter 7 liquidation. (Docket No. 141 in Individual Case.) But, the Blair Oil Case remained in Chapter 11.
Enter Jeffrey A. Weinman ("Mr. Weinman"). On August 20, 2015, the United States Trustee (the "UST") appointed Mr. Weinman as the Chapter 7 Trustee in the Individual Case. (Docket No. 143 in the Individual Case.) Notably, Mr. Weinman is not a trustee in the Blair Oil Case. But, very shortly after being appointed by the UST as Chapter 7 Trustee in the Individual Case, Mr. Weinman took control of Mr. Blair's 100% membership interest in the Debtor. Furthermore, acting as the Chapter 7 Trustee in the Individual Case and as sole member of the Debtor, on August 27, 2015, Mr. Weinman removed Mr. Blair (who, after all, had died) and appointed himself as the Manager of the Debtor.[3] (Ex. 5; Ex. C.) From that time on, he has controlled the Debtor in the Blair Oil Case.
Almost two years after he appointed himself to be the Debtor's Manager, Mr. Weinman initiated his first effort to be paid for his managerial services in the Blair Oil Case. He caused the Debtor to file a Plan of Reorganization and Disclosure Statement, which provided that "Mr. Weinman shall be entitled [to] receive compensation for his services to the Debtor, pre and post-confirmation. Such compensation shall be calculated in accordance with 11 U.S.C. § 326...". (Docket No. 198 at 16.) The Plan of Reorganization estimated that Mr. Weinman would receive $55,000 from the Debtor and also provided that "the Debtor will continue to employ Jeffrey Weinman as its Manager" after confirmation. (Id. ) The UST objected "based ... on legal concerns related to the compensation to be paid to Mr. Weinman." (Docket No. 215 at 2.) The UST argued that Mr. Weinman's proposed compensation rights violated the Bankruptcy Code. (Id. ) Then, the Debtor submitted an Amended Plan of Reorganization and Disclosure Statement again providing that Mr. Weinman be compensated for his work as the Manager of the Debtor in the approximate amount of $48,518. (Ex. 4 at 18.) The UST objected again. (Docket No. 227.)
Since then, the Debtor has not proceeded with the plan process. Instead, at Mr. Weinman's direction, the Debtor filed a "Motion for Allowance of Administrative Expense Claim Pursuant to 11 U.S.C. § 503(b)" (Docket No. 229, the "Motion"). In the Motion, the Debtor seeks allowance *585 of an administrative expense priority claim for Mr. Weinman in the amount of approximately $48,418 (the "Administrative Expense Claim") based upon estimated distributions to creditors in the Blair Oil Case. The UST objected to the Debtor's Motion. (Docket No. 233, the "Objection").
The Court convened a non-evidentiary hearing on the Debtor's Motion and the UST's Objection. (Docket No. 244.) Consistent with the request of the parties, the Court determined that an evidentiary hearing was required. On February 5, 2018, this Court conducted an evidentiary hearing on the Motion and the Objection. In support of its Motion, the Debtor presented testimony from Mr. Weinman and Jeffrey Bush, an expert witness who owns a professional placement firm focusing on the oil and gas industry. The UST did not call any additional witnesses but also examined Mr. Weinman and Mr. Bush. The Court admitted into evidence Exhibits 1-10 offered by the UST and Exhibits A-D and F-J offered by the Debtor. After the presentation of evidence, the UST and the Debtor made closing arguments. The Court took the matter under advisement. Since the trial, the Court has reviewed all the admitted exhibits and the transcript of the evidentiary hearing. (Docket No. 265, hereinafter "Tr. __".) The Motion and Objection are ripe for decision.
III. Factual Findings.
A. The Debtor and Its Business.
The Debtor is a limited liability company that invested in and owned royalty and working interests in oil and gas wells throughout the United States (primarily in Colorado and Texas). (Ex. 4 at 4.) Compared to other companies in the energy sector, its operations, assets, and liabilities were modest. For example, in 2014, the Debtor earned gross operating income of just $548,925. (Ex. 1 at 1; Ex. 2 at 1.) And, in the first four months of 2015 (just before the Debtor filed for bankruptcy), the Debtor realized gross operating income of only $66,246. (Id. ) In terms of assets, before its bankruptcy, the Debtor had 147 interests in oil and gas wells with a total book value of $1,315,050. (Ex. 1 at 10; Ex. 4 at 4). The Debtor also owned a residential condominium that it valued at $225,000 and miscellaneous equipment and inventory worth about $790,122 on a book-value basis. (Ex. 1 at 8 and 10-11.) As of the bankruptcy filing, the Debtor scheduled its liabilities, all unsecured, in the total amount of $1,102,202. (Id. at 7 and 20.) The largest creditor was the Audrey R. Blair Revocable Trust (the "ARB Trust"). Its $1,045,774 claim[4] (based on promissory notes) dwarfed the aggregate of $56,428 owed to the rest of the Debtor's 17 other trade creditors. (Id. at 15-20.)
Mr. Blair, the patriarch of an exceptionally wealthy family, wholly owned the Debtor and served as its sole Manager. Notwithstanding his position as sole Manager, for many years, Mr. Blair shared the day-to-day operating responsibilities of the Debtor with one of his sons: Peter H. Blair, Jr. ("Hy Blair"). But they had a falling-out because of Mr. Blair's marrying a new wife, Suella Crowley Blair, many years after the death of his first wife, Audrey R. Blair. Sometime after Mr. Blair's second marriage, he removed Hy Blair and appointed Todd A. Searles ("Todd Searles") - Suella Crowley Blair's son - in his son's place. Since Mr. Blair was quite elderly by that time, Todd Searles (acting through his corporate vehicle, Searles Enterprises, Inc. ("Searles Enterprises") )
*586 assisted in most of the day-to-day operations of the Debtor before it filed for bankruptcy protection. Nevertheless, Mr. Blair remained as sole Manager.
B. Reasons for the Debtor's Bankruptcy Filing.
The Debtor filed for bankruptcy protection because of a family dispute. Following the death of Mr. Blair's first wife, Audrey R. Blair, Mr. Blair managed the ARB Trust for the benefit of the children of that marriage: Hy Blair; Christopher Blair; and Audrey Black (collectively the "Blair Children"). As previously noted, Mr. Blair became estranged from the Blair Children when he married his second wife, Suella Crowley Blair. He was removed as a trustee of the ARB Trust.
Thereafter, the ARB Trust and two other trusts (the GST-Exempt Marital Trust and the Non-Exempt Marital Trust), acting at the behest of the Blair Children, sued Mr. Blair for malfeasance in the case captioned: In the Matter of The Audrey R. Blair Revocable Trust, GST-Exempt Marital Trust and Non-Exempt Marital Trust , Case No. 12-PR-2227 (Probate Court, City and County of Denver, Colorado). On March 27, 2015, the State Probate Court entered a surcharge judgment against Mr. Blair for breach of fiduciary duty in the amount of $2,372,688. (Ex. 3 at 16.) Promptly thereafter, the State Probate Court entered an order freezing Mr. Blair's assets. Because of such order, assets of the Debtor also were frozen. With their assets frozen, both Mr. Blair and the Debtor filed for bankruptcy protection.
C. Mr. Weinman's Control of the Debtor.
During the early stages of the Debtor's bankruptcy proceedings, Todd Searles was the public face of the Debtor. But things changed when Mr. Blair died just a few months after the start of the Blair Oil Case. The Court converted the Individual Case from Chapter 11 to Chapter 7. Then, the UST appointed Mr. Weinman as the Chapter 7 Trustee in the Individual Case. Mr. Weinman promptly took control of Mr. Blair's 100% membership interest in the Debtor. Furthermore, acting as the Chapter 7 Trustee in the Individual Case and as sole member of the Debtor, Mr. Weinman appointed himself as the new Manager of the Debtor on August 27, 2015. (Ex. 5; Ex. C.) Mr. Weinman testified at trial about his role:
... I didn't view myself as a Chapter 11 trustee and I actually did not view myself and still don't view myself as a Chapter 7 trustee for the Blair Oil Case. I am not the trustee of the case. I am the manager by virtue of the fact that I had the authority to become the manager, but I'm not the Chapter 7 trustee [of the Debtor].
(Tr. 43:2-7.) The Court concurs with Mr. Weinman's understanding of his role.
After Mr. Weinman became the Debtor's Manager, he determined that he needed help. Both before and after the Debtor's bankruptcy filing, Todd Searles and Searles Enterprises had assisted in the day-to-day affairs of the Debtor. They charged a fee of about $18,000 per month for such services. Mr. Weinman decided that such a fee was unwarranted. So, he terminated Todd Searles and Searles Enterprises from all work for the Debtor. (Ex. 1 at 2; Tr. 23:8-15.)
Having caused such removal, Mr. Weinman hired McCartney Engineering, LLC ("McCartney Engineering"), an oil and gas engineering firm, to assist him "in the truly oil and gas aspects of the case." (Tr. 26:2-6; Ex. 6; Ex. D.) Mr. Weinman engaged McCartney Engineering to perform "Ongoing Management Consulting Services"
*587 and "Oil and Gas Consulting Services" which included evaluation of the Debtor's oil and gas properties and "advice and assistance in liquidation of oil and gas assets owned by Blair Oil." (Ex. 6 at 1; Ex. D at 1.) The Debtor agreed to compensate McCartney Engineering on an hourly basis with the rate being dependent on whether it was performing bookkeeping and accounting services, compliance/legal work, or engineering services. (Id. at 1-2.) The Debtor did not seek to employ McCartney Engineering as a professional under Section 327. Since Mr. Weinman retained McCartney Engineering on behalf of the Debtor (about two and a half years ago), Mr. Weinman has continued to be the controlling Manager of the Debtor and McCartney Engineering has continued to provide supporting services.
D. Mr. Weinman's Background and Experience.
Mr. Weinman is a respected Colorado attorney who has practiced bankruptcy law for 42 years. In addition to a law degree, he has a graduate degree in finance with a focus on securities analysis and business finance. Mr. Weinman has served as a Chapter 7 trustee for over 29 years. During such time, he has administered tens of thousands of Chapter 7 consumer and business cases. Additionally, he has represented hundreds of Chapter 11 debtors in reorganization proceedings. Mr. Weinman has worked on cases involving many different industries, including in the oil and gas sector. Although he has served as a Chapter 11 trustee and a Chapter 11 examiner occasionally, Mr. Weinman has never previously appointed himself as a manager of a Chapter 11 limited liability company debtor by virtue of his role as a Chapter 7 trustee in another case - as happened in the Blair Oil Case.
E. Mr. Weinman's Decision to Liquidate the Debtor.
Shortly after Mr. Weinman assumed control of the Debtor, he determined that the Debtor should be liquidated rather than reorganized as an ongoing business. Mr. Weinman testified at trial:
... keeping the assets [of the Debtor] did not seem like a terribly good idea since ... the monthly outflow exceeded the inflow .... I haven't seen that sort of circumstance generate a confirmed Chapter 11 plan in any kind of case, but in particular ... these were [oil and gas] assets that were very fragile and subject to precipitous market drops and I wasn't prepared to hang around. Of course, as a fiduciary I didn't think I could do that, to wait for an upturn, so I didn't think a Chapter 11 plan made much sense under the circumstances and any reasonable Chapter 11 plan when you don't have a net operating cash flow, positive cash flow, is going to be a liquidation.
(Tr. 30:16-25 and 31:1-2; see also Tr. 89:8-25 (confirming that the Debtor's assets should be liquidated quickly).)
F. Mr. Weinman's Work as the Debtor's Manager .
True to Mr. Weinman's view that the Debtor's assets should be sold, the Blair Oil Case has so far been one long liquidation that is still in process. Unfortunately, Mr. Weinman did not keep contemporaneous time records to show the specific tasks that he performed as the Manager of the Debtor by date, description, and duration. (Tr. 61:20-24.) Instead, the Court is left only with Mr. Weinman's testimony about his work supplemented by the docket in the Blair Oil Case and the headings (but not the actual text) of one to two thousand e-mails sent by or received by Mr. Weinman relating to both the Blair Oil Case and the Individual Case. (Ex. J
*588 (listing of e-mail headings).[5] )
In a general sense, Mr. Weinman, viewed his "function as trying to steer the ship forward and to avoid as many icebergs as we could ... I was trying to preserve the assets and liquidate them as expeditiously as possible and with the best return possible." (Tr. 30:2-7.) Toward that end, Mr. Weinman: assessed the financial condition of the Debtor; evaluated income and expenses; hired professionals and other personnel (including attorneys, a real estate broker, an appraiser, and McCartney Engineering); continued oil and gas operations to the extent he deemed necessary until sale; considered asset valuations; marketed property; communicated with professionals and potential purchasers; attended meetings; developed a plan and disclosure statement; participated in Court hearings; and negotiated the sales of most of the Debtor's oil and gas, real estate, and personal property assets. Under Mr. Weinman's management, the Debtor filed eight motions to sell property, all of which the Court granted. (Docket Nos. 86, 91, 118, 129, 133, 137, 148, 171, 176, 235, 242, 257, 264, 270, 275.) Although Mr. Weinman is unable to specify the exact amount of time spent on work for the Debtor, his best estimate is about 400 hours. (Tr. 43:1-4.) The Court finds that Mr. Weinman performed a substantial amount of work as the Debtor's Manager.
In terms of results, one measure of performance in a liquidation is to assess the change in a debtor's cash position. When the Debtor filed for bankruptcy protection, the Debtor had $9,955 in cash. Subsequently, the Debtor filed at least 31 Monthly Operating Reports. (Ex. H; Ex. 8-10.) The Monthly Operating Reports show that the Debtor generally suffered operating losses during the bankruptcy proceedings but realized income from sales of assets. (Id. ) In the five most significant sale transactions, the Debtor received $577,000. (Ex. I.) The evidence was unclear whether such amount constituted gross or net proceeds. But, in any event, by November 30, 2017, the Debtor had $487,384 in cash. (Ex. H; Ex. 10.) Thus, the Court finds that Mr. Weinman liquidated most of the Debtor's assets. But, the Debtor has not made any disbursements to creditors yet. Notably, it appears extremely unlikely that there will be sufficient cash to pay the Debtor's creditors in full. Thus, no funds are likely to be disbursed from the Blair Oil Case to the Chapter 7 estate in the Individual Case in which Mr. Weinman was appointed.
G. Mr. Weinman's Expectations Regarding Compensation .
When Mr. Weinman appointed himself as the Manager of the Debtor, he did not have any expectation that he would receive additional compensation for that role. (Tr. 23:22-24; Tr. 88:12-16.) Consistent with such initial expectation, he never sought authorization from the Court to be employed as a "professional person" under Section 327(a). However, Mr. Weinman's views evolved as he spent significant time managing the Debtor. He testified that, after the passage of a few months, he "hoped that I would be [compensated] and I didn't necessarily think that I would be denied compensation." (Tr. 45:10-11.) Later, given the "relatively gargantuan amount of time [Mr. Weinman spent on the Blair Oil Case]," he began thinking that "it was not inappropriate to seek compensation for [his] services." (Tr. 24:7-11.) And, then, Mr. Weinman formed "a true *589 expectation that [he] would be compensated for [his] time." (Tr. 63:8-9.) He felt that "it's [not] expected that a Chapter 7 trustee devote his time as a non-trustee without compensation." (Tr. 45:18-19.)
Irrespective of Mr. Weinman's thoughts and expectations about compensation for his work as the Debtor's Manager, the evidence is clear that the Debtor never promised to pay Mr. Weinman for being the Manager of the Debtor. (Tr. 62:2-5.) There was no written or oral agreement. (Tr. 62:2-5; 69:9-17.) And, to make such a contract (which never happened) would have placed Mr. Weinman in the strange position of trying to reach an agreement with himself. The Debtor never requested Court approval of any agreement with Mr. Weinman.
In any event, after Mr. Weinman formed his expectation that he should receive some compensation, he took his concerns to counsel for Hy Blair and to the Blair Children since the ARB Trust held the largest claim in the Blair Oil Case. Mr. Weinman discussed the option of being compensated for his time using his standard hourly rate of $495 which he charges in his work as a bankruptcy attorney. Alternatively, at the suggestion of counsel for Hy Blair, they discussed using the method for calculating a Chapter 7 trustee's commission under in Section 326. Because the hourly lodestar approach would have exhausted most of the Debtor's cash, Mr. Weinman opted to pursue more modest compensation based on the Section 326 commission method for disbursements in the Blair Oil Case.
H. Mr. Weinman's Administrative Expense Claim .
Through the Motion, Mr. Weinman is seeking administrative expense compensation in the amount of $48,418 based on "estimated distributions" to creditors as of May 31, 2017. Notably, no disbursements have been made yet by Mr. Weinman to creditors in Blair Oil Case. But, Mr. Weinman estimates that he will make disbursements to creditors in the amount of $903,351[6] and, if such disbursements are made and the Section 326 commission formula is applied, the result would be a $48,418 commission. At trial, no evidence was presented to support the $903,351 projection. Instead, as of the last Monthly Operating Report, the Debtor reported just $487,384 in cash. (Ex. H; Ex. 10.)
At trial, Mr. Weinman relied primarily on his own testimony to establish alleged benefit to the Debtor's estate. As set forth above, Mr. Weinman clearly performed substantial services for the Debtor as its Manager. Because of his efforts, the Debtor sold assets and received at least $577,000. (Ex. I.) By November 30, 2017, the Debtor had $487,384 in cash compared to just $9,955 at the beginning of the Blair Oil Case. (Ex. H; Ex. 10.) So, the Court finds that the services performed by Mr. Weinman (i.e. , primarily liquidating assets) benefited the Debtor's estate.
More generally, Mr. Weinman testified that "at a minimum the benefit that was conferred was the difference between what [he is] asking to be compensated and what a CEO would have been compensated. Basically [his] time and energy at a discount which benefits the creditors of both estates." (Tr. 71:14-21.) Mr. Weinman stated, correctly, that his proposed compensation is substantially less than the $18,000 monthly fee that had been charged to the Debtor by Todd Searles and Searles Enterprises. And, Jeffrey Bush, who testified as an expert on executive compensation at *590 oil and gas companies, stated that the amount of compensation sought by Mr. Weinman was reasonable and similar to other oil and gas executives performing comparable services. (Tr. 83:8.) To further bolster his proposed compensation, Mr. Weinman asserted another benefit of his work. He stated that any amount paid to the ARB Trust in the Blair Oil Case would reduce the ARB Trust claim in the Individual Case, thus making more money potentially available for unsecured creditors in the Individual Case. Based on the evidence, the Court finds that the amount of compensation requested by Mr. Weinman generally is reasonable for the services that he provided.
IV. Conclusions of Law.
A. The Parties' Positions.
1. The Debtor's Position.
In the Motion, the Debtor requests that the Court allow Mr. Weinman the Administrative Expense Claim for "wages, salaries, and commissions" based upon Section 503(b)(1)(A) and utilizing the formula in Section 326(a) as applied to expected future disbursements in the Blair Oil Case. The Debtor acknowledges that it did not have any agreement with Mr. Weinman. However, after Mr. Weinman appointed himself as the Debtor's Manager, Mr. Weinman "provided his services to the Debtor in lieu of hiring a professional manager and incurring additional costs." (Mot. ¶ 10.) Furthermore, the Debtor allegedly understood that "at the conclusion of this bankruptcy case, it and Mr. Weinman would determine the amount, if any, of compensation to be paid to Mr. Weinman." (Id. ) After Mr. Weinman decided that he wished to pursue compensation from the Debtor, Mr. Weinman "negotiated a compensation package" with the Debtor's largest creditor.[7] The Debtor asserts that Mr. Weinman was not a "professional" within the meaning of Section 327(a), so Court approval of Mr. Weinman's employment was not necessary. Instead, the Debtor proposes that Section 503(b)(1)(A) governs the dispute. The Debtor cites no case law in support of the contention that a Chapter 7 trustee may receive compensation as a manager of a Chapter 11 limited liability company or derive personal gain through control of an asset of a Chapter 7 estate.
2. The UST's Position.
The UST does not seriously contest that Mr. Weinman provided valuable services as the Debtor's Manager. However, at a basic level, the UST contends that since Mr. Weinman was appointed as the Chapter 7 Trustee in the Individual Case, he may only be compensated for disbursements in the Individual Case under Section 326(a). Put another way, Mr. Weinman may not use his position as the Chapter 7 Trustee to obtain additional compensation from an asset of the Individual Case estate (i.e. , the Debtor's membership interest in the Debtor). The UST presents three main sub-arguments to deny any additional personal compensation for Mr. Weinman. First, "the Motion is unclear as to why a formula under Section 326(a) is appropriate" since Mr. Weinman is not a Chapter 7 trustee in the Blair Oil Case. (Obj. at 1.) Second, in the Motion, the Debtor does not request payment of an actual and necessary cost of the Debtor's estate as required under Section 503(b)(1)(A). (Id. ) And, third, Mr. Weinman is a "professional" within the meaning of Section 327(a) such that he was required to seek Court approval to be *591 retained; but since Mr. Weinman was not retained under Section 327(a) (and cannot be retained under Section 327(a) ), any compensation request must be denied. (Id. )
B. The Statutory Framework and Sequence of Analysis: Sections 503(b)(1)(A), 327(a), and 326(a).
The Debtor centers its position under the rubric of Section 503(b) which provides:
After notice and a hearing, there shall be allowed administrative expenses ... including - (1)(A) the actual, necessary costs and expenses of preserving the estate including - (i) wages, salaries, and commissions for services rendered after the commencement of the case ....
The burden of proving entitlement to an administrative expense priority claim falls on the movant - the Debtor in the Blair Oil Case - and such priority must be "narrowly construed." Isaac v. Temex Energy, Inc. (In re Amarex, Inc.) , 853 F.2d 1526, 1530 (10th Cir. 1988). Binding precedent from the United States Court of Appeals for the Tenth Circuit establishes that administrative expense priority claims must satisfy two main elements: "(1) the claim resulted from a post-petition transaction; and (2) the claimant supplied consideration that was beneficial to the debtor-in-possession (or trustee) in the operation of the company's business." Peters v. Pikes Peak Musicians Assoc. , 462 F.3d 1265, 1268 (10th Cir. 2006) (citing Amarex , 853 F.2d at 1530 ); see also In re Commercial Fin. Serv., Inc. , 246 F.3d 1291, 1293 (10th Cir. 2001) (same); Gen. Am. Transp. Corp. v. Martin (In re Mid Region Petroleum, Inc.) , 1 F.3d 1130, 1133 (10th Cir. 1993) (same). With respect to the "post-petition transaction" element in the context of employment, this element requires "affirmative action from the debtor-in-possession to either (1) accept the prior agreement between the debtor and claimant, or (2) agree to a new contract." Pikes Peak Musicians , 462 F.3d at 1271 ; see also Commercial Fin., 246 F.3d at 1294 (administrative expense claim not allowed since claimants continued to do work but had not been induced to do so by debtor).
Although the Debtor relies on Section 503(b)(1)(A), the Debtor also claims that Mr. Weinman is "not a 'professional' within the meaning of Section 327(a). Contrariwise, the UST contends that Mr. Weinman is a "professional." Section 327(a) is titled "Employment of professional persons" and states:
... the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.
The person seeking to be employed has the burden of satisfying the statutory requirements. Interwest Bus. Equip., Inc. v. U.S. Tr. (In re Interwest Bus. Equip., Inc.) , 23 F.3d 311, 318 (10th Cir. 1994). Compliance with Section 327(a) is mandatory for all "professional persons." Indeed, bankruptcy courts are not authorized to approve compensation for "professional persons" who do not meet the requirements of Section 327(a), including court approval of employment. Mark J. Lazzo, P.A. v. Rose Hill Bank (In re Schupbach Inv., L.L.C.) , 808 F.3d 1215 (10th Cir. 2015). And "any professional not obtaining approval is simply considered a volunteer if it seeks payment from the estate." Schupbach , 808 F.3d at 1219 (quoting Interwest , 23 F.3d at 318 ).
*592 Thus, in the context of the two main statutes presented by the Debtor and the UST, the sequence of the analysis is key. First, the Court must determine whether Mr. Weinman is a "professional person" within the meaning of Section 327(a). If Mr. Weinman is a "professional person," the Court must decide whether he has fully complied with Section 327(a). Furthermore, if Mr. Weinman is a "professional person," then he may not avoid the application of Section 327(a) merely by claiming an administrative expense priority under Section 503(b)(1)(A). To allow a "professional person" to skip Section 327(a) and still assert an administrative expense priority claim would "effectively write § 327(a) out of the Bankruptcy Code." Interwest , 23 F.3d at 318 (using the phrase "effectively write § 327(a) out of the Bankruptcy Code" but in the context of denial of an employment application for conflicts). Only if Mr. Weinman is not a "professional person" must the Court assess whether the Debtor has proved that the Administrative Expense Claim is an "actual, necessary cost[ ] and expense[ ] of preserving the estate" satisfying Section 503(b)(1)(A).
Finally, the UST also raised another statutory argument: "Mr. Weinman is entitled to compensation under § 326 in the Individual Case only." (Obj. ¶ 13.) Chapter 7 trustees have expansive duties within the bankruptcy system. 11 U.S.C. § 704. But, their compensation is very circumscribed by two statutes. 11 U.S.C. §§ 326 and 330. Section 330(a)(7) provides:
In determining the amount of reasonable compensation to be awarded to a trustee, the court shall treat such compensation as a commission, based upon section 326.
In turn, Section 326(a) establishes a complex formula for calculating a Chapter 7 trustee's compensation. The statute states:
In a case under chapter 7 or 11, the court may allow reasonable compensation under section 330 of this title of the trustee for the trustee's services, payable after the trustee renders such services, not to exceed 25 percent on the first $5,000 or less, 10 percent on any amount in excess of $5,000 but not in excess of $50,000, 5 percent on any amount in excess of $50,000 but not in excess of $1,000,000, and reasonable compensation not to exceed 3 percent of such monies in excess of $1,000,000, upon all moneys disbursed or turned over in the case by the trustee to parties in interest excluding the debtor, but including holders of secured claims.
11 U.S.C. § 326(a). Thus, the text of Section 326(a) allows compensation on a sliding scale of percentages based upon the distributions in the Chapter 7 case in which the Chapter 7 trustee was appointed.
C. The Section 327(a) Analysis.
1. Mr. Weinman Is a "Professional Person" Under Section 327(a).
The Bankruptcy Code does not expressly define the term "professional person." Instead, Section 327(a) lists several categories of persons[8] who are "professional persons": attorneys; accountants; appraisers; and auctioneers. The four specific types of jobs listed have a least one commonality - all are instrumental in the bankruptcy process itself. But, the listing is not exclusive or complete because Section 327(a) also applies to "other professional persons."
*593 The Court adopts the majority view that "other professional persons" are those "who play[ ] 'a central role in the administration' of the debtor's estate." In re Neidig Corp. , 117 B.R. 625, 628 (Bankr. D. Colo. 1990) (quoting Matter of Seatrain Lines, Inc. , 13 B.R. 980, 981 (Bankr. S.D.N.Y. 1981) ); see also In re The Dairy Dozen-Milnor, LLP , 441 B.R. 918, 922 (Bankr. D. N.D. 2010) (same); Elstead v. Nolden (In re That's Entertainment Mktg. Grp., Inc. ), 168 B.R. 226, 230 (N.D. Cal. 1994) (same); In re Century Inv. Fund VII L.P. , 96 B.R. 884, 893-94 (Bankr. E.D. Wis. 1989) (relying on "central role in administration standard"); Richard Levin and Henry Sommer, 3 COLLIER ON BANKRUPTCY ¶ 327.02[6][a] (Lexis/Nexis 16th ed. Supp. 2018) ("professional persons" are those "whose occupations play a fundamental or essential role in the administration of the debtor's estate"). Put slightly differently, the term "other professional persons cannot be considered other than in the context of the intimate relationship of the player to services peculiar to the administration of the reorganization process." Committee of Asbestos-Related Litigants and/or Creditors v. Johns-Manville Corp. (In re Johns-Manville Corp.) , 60 B.R. 612, 620 (Bankr. S.D.N.Y. 1986).
As in so many other areas of bankruptcy law, courts have identified various lists of "non-exclusive factors" that might be considered when making Section 327(a) decisions. For example, in In re First Merchants Acceptance Corp. , 1997 WL 873551 (D. Del. Dec. 15, 1997), the district court posited the following factors as bearing on whether a person is a "professional person" under the statute:
(1) whether the employee controls, manages, administers, invests, purchases or sells assets that are significant to the debtor's reorganization, (2) whether the employee is involved in negotiating the terms of a Plan of Reorganization, (3) whether the employment is directly related to the type of work carried out by the debtor or to the routine maintenance of the debtor's business operations; (4) whether the employee is given discretion or autonomy to exercise his or her own professional judgment in some part of the administration of the debtor's estate ...; (5) the extent of the employee's involvement in the administration of the debtor's estate ...; and (6) whether the employee's services involve some degree of special knowledge or skill, such that the employee can be considered a "professional" within the ordinary meaning of the term.
Id. at *3. The Court finds such factors are helpful is assessing whether someone is a "professional person" under Section 327(a).
As applied to Mr. Weinman in the Blair Oil Case, the Court determines that Mr. Weinman is a "professional person" within the meaning of Section 327(a). When the Court converted the Individual Case from Chapter 11 to Chapter 7, and because Mr. Blair wholly owned the Debtor, all of Mr. Blair's membership interest in the Debtor passed to the Chapter 7 bankruptcy estate in the Individual Case. Albright , 291 B.R. at 540. Upon his appointment as the Chapter 7 Trustee in the Individual Case, Mr. Weinman (acting as the sole member of the Debtor) was entitled to control all governance of the Debtor, including the power to elect and change the Manager. Id. at 541. And, on August 27, 2015, he exercised such rights and powers by removing Mr. Blair and appointing himself as the Debtor's Manager. But, simply appointing himself as the Manager of the Debtor did not entitle Mr. Weinman to receive compensation from the Debtor without consideration of Section 327(a).
In naming himself as the Debtor's Manager (an entity with which he had no prior *594 relationship), Mr. Weinman put himself in the position of "a central role in the administration of the debtor's estate" - indeed, it was not only "a" central role, it was "the" central role. Mr. Weinman has special knowledge and skill by virtue of his education (a law degree and a graduate degree in finance) and his experience (an accomplished attorney and long-standing Chapter 7 trustee). He is a "professional" within the ordinary meaning of the word. After becoming the Manager of the Debtor, he controlled virtually every facet of the bankruptcy proceedings of the Debtor. He elected to operate the Debtor rather than sell the membership interest held by the Chapter 7 estate in the Individual Case. He chose not to convert the Blair Oil Case to a Chapter 7 liquidation. He decided that the Debtor's assets should be liquidated rather than reorganized in an operating company. Mr. Weinman selected and directed attorneys, appraisers, accountants, and other professionals for the Debtor. He negotiated all the Debtor's sales of assets. And, he decided to prepare and present a disclosure statement and plan of reorganization that he later amended. Mr. Weinman communicated with creditors, including the ARB Trust, and even negotiated his own compensation request with the ARB Trust. He became the only decision-maker for the Debtor and exercised complete autonomy over the Debtor (subject to Court approval of certain actions). He alone ultimately exercised professional judgment for the Debtor's estate. Thus, every one of the non-exclusive factors identified in the First Merchants case points strongly toward Mr. Weinman being considered a "professional person."
Neither the Debtor nor the UST has identified any case law concerning a Chapter 7 trustee who named himself as a manager of a bankrupt limited liability company. But, the most analogous decisions support characterization of Mr. Weinman as a "professional person" under Section 327(a). A Colorado case, Neidig , 117 B.R. 625, is particularly persuasive. In Neidig , a Chapter 11 trustee employed a company to manage and operate the debtor's only asset: a radio station. The Chapter 11 trustee entered into a contract with the company for such management services but the arrangement was not presented to the bankruptcy court and creditors for approval under Section 327(a). The company "acted with relatively unfettered discretion and autonomy" "conducted the day-to-day affairs of the business," and "was effectively responsible for administration of the station." Id. at 629. Having failed to secure bankruptcy court authorization for employment under Section 327(a), the company (like the Debtor in the Blair Oil Case) filed an application for an administrative expense priority claim under Section 503(b)(1)(A) instead. The bankruptcy court denied the administrative expense priority claim because the claimant was a "professional person" who was subject to the requirements of Section 327(a) but had not been approved for employment by the bankruptcy court and likely was ineligible for employment by virtue of conflicts. Id. at 630-31. Furthermore, the Neidig court emphasized the importance of complying with Section 327(a) to protect the parties and the bankruptcy process. The Neidig decision recognized that denying compensation might seem like a harsh result. But, "protection of the integrity of the system is, unfortunately, sometimes at the expense of maximizing assets ...". Id. at 632. The Court concurs with the Neidig decision and reasoning.
Courts in other cases considering the employment of managers who exercised significant control over debtors also have determined that such managers are "professional persons" under Section 327(a). See *595 In re Marion Carefree L.P. , 171 B.R. 584, 588 (Bankr. N.D. Ohio 1994) ("The nature of Manager's duties and the degree of autonomy which Manager enjoys in performing these duties compel the conclusion that Manager is an 'other professional person' within the meaning of Section 327(a)."). Accordingly, the Court determines that Mr. Weinman is a "professional person" within the meaning of Section 327(a).
2. Mr. Weinman May Not Receive Compensation Under Sections 327(a) and 330 Because He Did Not Request or Receive Court Approval to Be Employed.
Mr. Weinman never sought approval from the Court for his employment as a "professional person" under Section 327(a) and, since no application was filed, the Court did not approve his employment. The Court is empowered to approve compensation for those "professional persons" whose employment has been approved under Section 327(a). On the other hand, the Court has no authority to approve compensation for "professional persons" whose employment has not been approved. Instead, according to binding precedent, "any professional not obtaining approval is simply considered a volunteer if [he] seeks payment from the estate." Schupbach , 808 F.3d at 1219 (quoting Interwest , 23 F.3d at 318 ). The Debtor's counsel acknowledged as much when he conceded in closing argument:
... the law is clear that if he [Mr. Weinman] is a professional, he's required to seek approval under Section 327 and under the applicable law, you [the Court] can't authorize compensation prior to the date of the application... No question about it ... The law is very, very clear on that in this circuit [the Tenth Circuit Court of Appeals].
(Tr. 127:4-12.) Thus, the Court cannot approve compensation for Mr. Weinman in the circumstances of the Blair Oil Case because he was not approved as a "professional person" eligible to receive compensation.
3. Even If a Chapter 7 Trustee Submits an Application to Be Employed Under Section 327(a) in such Circumstances, Such Application Would Likely Not be Approved.
Given that Chapter 7 trustees frequently encounter limited liability company issues, the Court offers some additional analysis for cases, like this, in which a Chapter 7 estate wholly owns the membership interests in a limited liability company that itself is in Chapter 11 bankruptcy. As set forth in Albright , 291 B.R. at 540, a Chapter 7 debtor's membership interests in a Chapter 11 limited liability company pass to the Chapter 7 bankruptcy estate. At that point, a Chapter 7 trustee, acting as the sole member of a Chapter 11 limited liability company, may control all governance of a Chapter 11 limited liability company. Id. A Chapter 7 trustee may try to obtain value for a Chapter 7 estate by actions such as: (1) pursuing conversion of a Chapter 11 case to a liquidation under Chapter 7 ( 11 U.S.C. § 1112(a) ) following which a Chapter 7 trustee would be appointed for the limited liability company; (2) requesting appointment of a Chapter 11 trustee for a Chapter 11 limited liability company ( 11 U.S.C. § 1104 ); (3) leaving the pre-bankruptcy manager of a Chapter 11 limited liability company in place[9] ; (4) changing the manager of a Chapter 11 *596 limited liability company by appointing an independent and disinterested new manager; (5) changing the manager of a Chapter 11 limited liability company by a Chapter 7 trustee appointing herself to be the new manager; (6) consistent with Section 363(b), selling a Chapter 7 estate's membership interests in a Chapter 11 limited liability company; or (7) consistent with Section 554(a) abandoning a Chapter 7 estate's membership interest in a Chapter 11 limited liability company if it is burdensome to a Chapter 7 estate or of inconsequential value or benefit to a Chapter 7 estate. Of course, a Chapter 7 trustee's decision how to proceed with a Chapter 11 limited liability company must be guided by the Chapter 7 trustee's fiduciary responsibility to the Chapter 7 estate and informed by one of the Chapter 7 trustee's primarily duties: "[to] collect and reduce to money the property of the estate for which such trustee serves ...". 11 U.S.C. § 704(a)(1) ;[10] see also U.S. Tr. v. Joseph (In re Joseph) , 208 B.R. 55, 60 (9th Cir. BAP 1997) (Chapter 7 trustee is an independent person whose "primary job is to marshall and sell assets, so that these can be distributed to the estate's creditors"). If there is nothing in it for the Chapter 7 estate, there may be no role for a Chapter 7 trustee. See, e.g., Jubber v. Bird (In re Bird) , 577 B.R. 365, 377 (10th Cir. BAP 2017) (quoting passages of Chapter 7 Trustee Handbook confirming that Chapter 7 trustee should not administer an asset if it will not generate sufficient funds for distribution to Chapter 7 creditors).
Based upon the Court's observations, Chapter 7 trustees in this District seem to prefer appointing themselves as new managers of Chapter 11 limited liability companies. And, there is no prohibition in the Bankruptcy Code that would block a Chapter 7 trustee from assuming such role if a Chapter 7 trustee determines that such appointment would benefit the Chapter 7 estate. See Interwest , 23 F.3d at 318 ("The Bankruptcy Code and Rules do not provide authority for the court to prohibit a professional from working for any client it chooses.") But, under Sections 326(a) and 330(a)(7), such Chapter 7 trustee's compensation generally may be based only on disbursements made in the Chapter 7 case. That is the normal course. If a Chapter 7 trustee wishes to obtain additional compensation from the Chapter 11 limited liability company, such Chapter 7 trustee, as a "professional person," would need to secure Court approval to be employed under Section 327(a) in the Chapter 11 limited liability company case.
In the Blair Oil Case, Mr. Weinman did not file an application for Court approval to be employed and receive additional compensation as the Debtor's Manager. So, unfortunately, he cannot be paid under Schupbach , 808 F.3d at 1219. However, the Court observes that even if a Section 327(a) application is filed by a Chapter 7 trustee in similar circumstances, such application may be very problematic.
A Chapter 7 trustee who controls the membership interests of a Chapter 11 limited liability company may not be "disinterested" vis-à-vis the Chapter 11 debtor, especially to the extent there are any debts between the two bankruptcy estates. See 11 U.S.C. § 327(a) (to be employed, the professional must not "hold or represent an interest adverse to the estate" and must be a "disinterested person[ ]"); 11 U.S.C. § 101(14) (defining "disinterested person" which means a person that is not "a creditor, an equity security holder, or an insider"). There may also be competing fiduciary duties. Further, attempting to use one's position as a Chapter 7 trustee to *597 secure additional employment and compensation as a manager of a Chapter 11 limited liability company may create an appearance of impropriety and may also involve conflicts or potential conflicts of interest. See U.S. Tr. v. Bloom (In re Palm Coast, Matanza Shores L.P.) , 101 F.3d 253, 257-58 (2nd Cir. 1996) (" Section 327 must be interpreted to prohibit the trustee from hiring himself in any non-lawyer or non-accountant capacity.") Such action may harken back to historical concerns of skullduggery, corruption, and cronyism under the Bankruptcy Act.[11] See Office of U.S. Tr. v. McQuaide (In re CNH, Inc.) , 304 B.R. 177, 181 (Bankr. M.D. Pa. 2004) (analyzing Section 327(a) and referring to historical bankruptcy skullduggery, corruption, and cronyism as animating reason for requiring court approval of professionals); In re Wolfson , 575 B.R. 522, 523 (Bankr. D. Colo. 2017) (referring to "appearance of impropriety" and "cronyism"). Parties in interest might wonder if a Chapter 7 trustee is "double-dipping" after being appointed by the UST and being entitled to a Section 326(a) commission in a Chapter 7 case and then using that role as a spring board for a new job as a limited liability company manager to receive additional compensation. Moreover, a Chapter 7 trustee's judgment may be clouded by efforts to pursue or protect his own personal gain. The issue is in some ways analogous to a Chapter 7 trustee attempting to hire the Chapter 7 trustee's own law firm - an unsavory and problematic practice permissible only in limited circumstances. Wolfson , 575 B.R. 522 (Chapter 7 trustee may hire own law firm only in special circumstances; such practice is discouraged). Thus, even if a Chapter 7 trustee presents a timely application to employ himself as a manager for a Chapter 11 limited liability company, the Court may be quite reticent to approve such application.
D. The Section 503(b)(1)(A) Analysis.
The Court has determined that Mr. Weinman is a "professional person" under Section 327(a) but he did not request or receive approval to be employed in the Blair Oil Case. As a result, he may not be compensated under Sections 327(a) and 330. Furthermore, since he is a "professional person," Mr. Weinman cannot avoid such adverse result by merely invoking Section 503(b)(1)(A) and requesting allowance of an administrative expense priority claim. As noted earlier, to allow a "professional person" to skip Section 327(a) and still assert an administrative expense priority claim would "effectively write § 327(a) out of the Bankruptcy Code." Interwest , 23 F.3d at 318 ; see also Neidig , 117 B.R. 625 (denying Section 503(b)(1)(A) administrative expense claim for "professional person" who had not been approved under Section 327(a) ). Thus, the Debtor cannot properly invoke Section 503(b)(1)(A) in the circumstances of the Blair Oil Case as a basis for an administrative expense priority claim for Mr. Weinman.
*598 However, even if Mr. Weinman was not barred from pursuing an administrative expense priority claim under Section 503(b)(1)(A) by virtue of Section 327(a), the Debtor has failed to meet its burden to establish that the Administrative Expense Claim is an "actual, necessary cost[ ] and expense[ ] of preserving the estate." Administrative expense priority claims must satisfy two main elements: "(1) the claim resulted from a post-petition transaction; and (2) the claimant supplied consideration that was beneficial to the debtor-in-possession (or trustee) in the operation of the company's business." Pikes Peak Musicians , 462 F.3d at 1268 ; see also Commercial Fin. , 246 F.3d at 1293 ; Mid Region Petroleum , 1 F.3d at 1133 ; Amarex , 853 F.2d at 1530.
Although Mr. Weinman did supply consideration that was beneficial to the Debtor (including assistance in liquidating the Debtor's assets), the Debtor has not satisfied the "post-petition transaction" element under Section 503(b)(1)(A). In the Blair Oil Case, Mr. Weinman came to the scene post-petition and never had any agreement with the Debtor regarding wages, a salary, or a commission. After Mr. Weinman became the Chapter 7 Trustee in the Individual Case and appointed himself as the Debtor's Manager the Blair Oil Case, he had no initial expectation that he would receive any compensation from the Debtor. Then, as a few months passed, Mr. Weinman started to "hope[ ]" that he would be compensated. (Tr. 45:10-11.) And later still, he began to believe that he should receive additional compensation because "it's [not] expected that a Chapter 7 trustee devote his time as a non-trustee without compensation." (Tr. 45:18-19.)
The Court appreciates Mr. Weinman's hope that he would receive additional compensation from the Debtor. And, again, the Court finds that he provided benefit to the Debtor. But payment by the Debtor to Mr. Weinman is neither actually incurred nor necessary because the Debtor never induced Mr. Weinman to do anything. He elected to assume the role of the Manager without seeking to be employed as a "professional person" and thus acted as a volunteer. Schupbach, 808 F.3d at 1219. So, Mr. Weinman is not entitled to an administrative expense priority claim under Section 503(b)(1)(A). Pikes Peak Musicians , 462 F.3d at 1271 ; Commercial Fin., 246 F.3d at 1294 ; see also In re FPMC Austin Realty Partners, L.P. , 573 B.R. 679, 695-96 (Bankr. W.D. Tex. 2017) (because there was no "pre-existing agreement" and "there was no [new] agreement in place" prior to the work, administrative expense priority claim was denied).
E. The Section 326(a) Analysis.
Irrespective of Sections 327(a) and 503(b)(1)(A), the UST advances the overarching argument that Chapter 7 trustee compensation is limited by Section 326(a) only to disbursements made in the Chapter 7 case in which the Chapter 7 trustee is appointed. The Court agrees.
Chapter 7 trustees are an indispensable part of the bankruptcy system. Under the Bankruptcy Code, Chapter 7 trustees are required to "collect and reduce to money the property of the estate," "investigate the financial affairs of the debtor," "be accountable for all property received," perform a myriad of other critical functions, and close the bankruptcy estate "expeditiously." 11 U.S.C. § 704(a). It is hard work. For all this, Chapter 7 trustees often are poorly compensated. If the Chapter 7 liquidation process does not garner sufficient funds for distributions to creditors, Chapter 7 trustees receive only $60[12] (or *599 nothing if the bankruptcy filing fee is waived).[13] If money is available for creditors, Sections 326(a) and 330(a)(7) together provide that compensation to Chapter 7 trustees is based upon a percentage of "all moneys disbursed or turned over in the case by the trustee to parties in interest." 11 U.S.C. § 326(a) (emphasis added); see also 11 U.S.C. 330(a)(7) ("In determining the amount of reasonable compensation awarded to a trustee, the court shall treat such compensation as a commission, based on section 326.")
The percentage amounts listed in Section 326"are presumptively reasonable for Chapter 7 trustee awards." Caillouet v. JFK Capital Holdings, L.L.C. (In the Matter of JFK Capital Holdings, L.L.C.) , 880 F.3d 747, 753 (5th Cir. 2018). And, " Section 330(a)(7) therefore treats the commission as a fixed percentage, using Section 326 not only as the maximum but as a baseline presumption for reasonableness in each case." Id. at 755 ; see also In re Rowe , 750 F.3d 392, 396-97 (4th Cir. 2014) (" § 330(a)(3) is generally immaterial in determining the compensation for a Chapter 7 trustee"; "absent extraordinary circumstances, a Chapter 7 trustee's fee award must be calculated on a commission basis, as those percentages are set out in § 326(a)"); Mohns, Inc. v. Lanser , 522 B.R. 594, 601 (E.D. Wis. 2015), aff'd 796 F.3d 818 (7th Cir. 2015) ("Congress viewed a commission calculated under the formula in § 326 as the right amount of compensation in nearly every case").
As a result of the foregoing, Mr. Weinman, as a Chapter 7 trustee, is entitled to a statutory commission based upon a percentage of disbursements in the Individual Case in which he was appointed as the Chapter 7 Trustee.[14] The statutory commission also is the maximum compensation that the Court is authorized to award to Mr. Weinman in the Chapter 7 Individual Case.
However, Mr. Weinman now is asking for additional compensation from the Debtor in the Blair Oil Case. As the Chapter 7 Trustee in the Blair Oil Case, Mr. Weinman's principal responsibility vis-à-vis the Chapter 7 estate's ownership of the membership interest in the Debtor was to "collect and reduce to money" such membership interests in the Debtor. For example, Mr. Weinman could have sold the membership interests in the Debtor under Section 363(b), after receiving Court approval in the Individual Case. If he had done so, he clearly would not be entitled to exceed the Section 326(a) statutory commission since part of the Chapter 7 Trustee's job is to liquidate assets. But rather than engage in such course (or other alternatives), Mr. Weinman appointed himself to manage the Debtor in an effort that ultimately will not directly benefit the Chapter 7 estate in the Individual Case. No surplus will be up-streamed to the Chapter 7 estate. While acknowledging that Mr. Weinman spent considerable time as the Debtor's Manager, to allow additional compensation in the Blair Oil Case would contravene the *600 Section 326(a) maximum statutory compensation available to Chapter 7 trustees.
V. Conclusion.
For the reasons set forth above, the Court DENIES the Motion.

11 U.S.C. § 101 et seq. Unless otherwise indicated, all references to "Section" are to Sections of the Bankruptcy Code.

Unless otherwise indicated, this Court will use the convention "Docket No. ___" throughout this opinion to refer to the number of a particular document in the electronic CM/ECF docket for the Blair Oil Case.

The Debtor's Limited Liability Company Resolution evidencing the removal of Mr. Blair states that it was executed on September 22, 2015, but that the various actions (including appointment of Mr. Weinman as the Manager of the Debtor) "were duly adopted" on August 27, 2015. (Ex. 5; Ex. C.) The discrepancy between dates is confusing, but is not critical to adjudication of the current dispute. Thus, the Court assumes that Mr. Weinman became the Debtor's Manager as of August 27, 2015 notwithstanding that the corporate resolution was executed about a month later.

The Debtor scheduled the ARB Trust claim in the amount of $1,045,774. (Ex. 1 at 15.) However, the ARB Trust later filed a proof of claim (Claim No. 4-1) in a slightly higher amount: $1,062,720.

The e-mail listing presented in Exhibit J is extremely cursory and contains columns identifying only the name of a sender or recipient, a short message heading (such as "Blair & Blair Oil"), and a date for the many e-mail messages.

If this estimate is correct and the ARB Trust claim in the Blair Oil Case is not disallowed, then no surplus will be available for the estate in the Individual Case.

The ARB Trust has not objected to the Motion and allowance of the Administrative Expense Claim.

Section 101(41) states that "[t]he term person includes individual, partnership, and corporation, but does not include a governmental unit ...".

Leaving the Manager of the Debtor in place in the Blair Oil Case was impossible since Mr. Blair (who was the Manager) died.

The Chapter 7 trustee's other statutory duties are listed in Section 704(a).

The Court does not suggest that Mr. Weinman has engaged in any form of skullduggery, corruption, or cronyism in the Blair Oil Case. Quite to the contrary, Mr. Weinman is a very capable Chapter 7 trustee who has served in this jurisdiction for many years. The evidence at trial indicated that Mr. Weinman's main motivation in appointing himself as the Manager was to save money for the Debtor by removing Todd Searles and Searles Enterprises. And, Mr. Weinman thought he could do a good job in managing what effectively was a liquidation of the Debtor. But appearances matter. Sometimes, "[t]he protection of the integrity of the bankruptcy process is more important than the potential loss of assets for a particular estate." Colorado Nat'l Bank of Denver v. Ginco, Inc. (In re Ginco, Inc.) , 105 B.R. 620, 622 (D. Colo. 1988).

11 U.S.C. § 330(b)(1) ("There shall be paid from the filing fee in a case under chapter 7 of this title $45 to the trustee serving in such case, after such trustee's services are rendered."); 11 U.S.C. § 330(b)(2) (providing for payment of additional $15 to Chapter 7 trustees subject to approval of Judicial Conference of the United States).

28 U.S.C. § 1930(f) (allowing the Bankruptcy Court to waive bankruptcy filing fees under certain circumstances).

In the unlikely event that there is a surplus available in the Blair Oil Case and such surplus is up-streamed to the Chapter 7 estate in the Individual Case, then Mr. Weinman's statutory commission (which is based only on disbursements in the Individual Case) may also increase.